Present:  All the Justices

STEVEN Q. BECK AND BEVERLY S. BECK

v.  Record No. 992904     OPINION BY JUSTICE ELIZABETH B. LACY
                                        November 3, 2000
WALTER E. SMITH

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Arthur W. Sinclair, Judge Designate

In this appeal, we consider a judgment of the trial court vacating a jury verdict and entering judgment against the buyers of property on the ground that they could not prevail as a matter of law on (1) a breach of contract claim because the terms of the contract for sale of property were merged into the deed, or on (2) a claim of fraud because the buyers had authorized a title search.

The facts are not in dispute.  In August 1995, Steven Q. Beck and his wife Beverly S. Beck (collectively "the Becks") executed a contract with Walter E. Smith for the purchase of unimproved real estate owned by Smith.  The contract included provisions requiring Smith to obtain a building permit for the construction of a three-bedroom house on the property and to provide a general warranty deed subject to utility easements that "do not materially and adversely effect [sic] the Purchaser's intended use of the Property . . . ."

On February 6, 1996, Smith granted a utility easement to Rappahannock Electric Cooperative (Rappahannock) across a

portion of the land upon which the Becks' house was to be built. The easement was recorded on February 7.[1] Settlement occurred two days later, February 9, 1996.

Prior to settlement, the Becks engaged the settlement attorney to conduct a title search on their behalf. Neither the settlement attorney nor Smith told the Becks about Rappahannock's recorded easement prior to, or at, the settlement. The deed of conveyance did not specifically identify Rappahannock's easement, reciting only that the conveyance was made subject to any easements "contained in duly recorded deeds, plats and other instruments . . . ." Rappahannock subsequently began to construct an electric transmission line utilizing the easement.

The Becks filed a motion for judgment against Smith for breach of contract and fraud. The Becks alleged that Rappahannock's easement materially and adversely affected their intended use of the property contrary to the terms of the sales agreement and that, by failing to tell the Becks of the easement, Smith knowingly misrepresented material facts upon which the Becks relied at settlement.

---

[1] On February 8, 1996, Smith gave Bell Atlantic an easement across the property for the installation and maintenance of telephone lines. However, this easement was inside an existing easement, was recorded after settlement, and is not involved in this appeal.

Following presentation of evidence, the jury returned a verdict in favor of the Becks on both counts. The Becks were awarded $30,900 compensatory damages and $3,000 consequential damages on the breach of contract count. The jury also awarded the Becks $10,000 in compensatory damages along with $17,000 in punitive damages on the fraud count. Smith moved to set aside the verdict arguing that the Becks were not entitled to recover on their breach of contract count because, as a matter of law, the provisions of the contract of sale regarding the impact of the utility easement were merged into the deed. Smith also argued that the Becks could not recover as a matter of law on the fraud count because they had conducted a title examination and, therefore, could not rely on any representations by Smith.

After further argument and briefing, the trial court entered an order granting Smith's motion, vacating the jury verdict, and entering judgment in favor of Smith. We awarded the Becks an appeal.

## I.  Breach of Contract

The contract for sale provided that any utility easement would "not materially and adversely effect [sic] the . . . intended use of the Property" by the Becks. The contract for sale also provided that the representations and warranties of the seller contained in the contract "SHALL BE DEEMED MERGED

3

INTO THE DEED DELIVERED AT SETTLEMENT AND SHALL NOT SURVIVE SETTLEMENT." Neither this language nor similar language regarding the impact of utility easements was repeated in the deed. Based on the merger language in the contract of sale and on the doctrine of merger, the trial court concluded that the contract of sale's requirement regarding the impact of utility easements was not collateral to the sale, was merged into the final deed of conveyance, and, therefore, was no longer an enforceable provision.

Under the doctrine of merger, provisions in a contract for sale are extinguished and merged into the deed, an instrument of higher dignity. However, provisions which are collateral to the passage of title and not covered by the deed are not merged into the deed and survive its execution. Empire Mgmt. & Dev. Co. v. Greenville Assocs., 255 Va. 49, 54, 496 S.E.2d 440, 443 (1998); Davis v. Tazewell Place Assocs., 254 Va. 257, 262-63, 492 S.E.2d 162, 165 (1997); Miller v. Reynolds, 216 Va. 852, 854-55, 223 S.E.2d 883, 885 (1976); Woodson v. Smith, 128 Va. 652, 656, 104 S.E. 794, 795 (1920).

In discussing the doctrine of merger, we have explained that a deed "is a mere transfer of title." Miller, 216 Va. at 855, 223 S.E.2d at 885. The deed is the final expression of the agreements between the parties as to "every subject which it undertakes to deal with," and any conflicts between the

4

terms of prior agreements and the terms of the deed are resolved by the deed. Woodson, 128 Va. at 656, 104 S.E. at 795.

Nevertheless, we have recognized that not all agreements between the parties regarding the purchase and sale of the property are contained in the deed. Id. Such agreements are considered collateral to the sale if they are distinct agreements made in connection with the sale of the property, if they do not affect the title to the property, if they are not addressed in the deed, and if they do not conflict with the deed. See, e.g., Empire Mgmt., 255 Va. at 54, 496 S.E.2d at 443 (agreement for payment of rental income after transfer of property deemed collateral); Davis, 254 Va. at 263-64, 492 S.E.2d at 165-66 (warranty that house to be constructed on property would be constructed in workmanlike manner held collateral); Miller, 216 Va. at 854-56, 223 S.E.2d at 884-86 (agreement that land was suitable for percolation and would qualify for building permit found collateral).

If an agreement meets these criteria, it is a collateral agreement, is not merged into the deed, and survives the execution of the deed. In this case, the provision in the sales contract regarding the impact of easements is a distinct agreement, does not affect the validity or nature of the title conveyed, is not addressed in the deed, and does not conflict

5

with the terms of the deed.  Under these circumstances, the agreement in the contract for sale regarding the impact of utility easements on the Becks' intended use of the property was collateral to the transfer of title, was not merged into the deed, and survived the execution of the deed.

Accordingly, we will reverse the judgment of the trial court entered in favor of Smith on the breach of contract count.

## II.  Fraud

The Becks assert that Smith's failure to notify them of the Rappahannock utility easement constituted the deliberate, intentional, and knowing misrepresentation of Smith's actual knowledge that the easement would interfere with the location of the Becks' residence and that they were damaged by their reliance on this misrepresentation.  The trial court held that because the Becks undertook to investigate the status of the title prior to settlement through their attorney, the Becks were not entitled to rely on any misrepresentation on the part of Smith with regard to the easements.

An action for fraud requires a showing that there was a false representation of a material fact, made intentionally and knowingly with the intent to mislead, and relied upon by the party misled to his detriment.  Winn v. Aleda Constr. Co., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).  Concealment of

6

a material fact may constitute the element of misrepresentation.  Van Deusen v. Snead, 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994).

Reliance may not be justified, however, when a potential buyer undertakes an investigation regarding the matter at issue.  Upon undertaking such an investigation, the buyer is charged with the knowledge the investigation reveals, or, if the investigation was incomplete, the knowledge that would have been revealed had the investigation been pursued diligently to the end.  Watson v. Avon St. Bus. Ctr., Inc., 226 Va. 614, 619, 311 S.E.2d 795, 798 (1984); Poe v. Voss, 196 Va. 821, 827, 86 S.E.2d 47, 50 (1955); Masche v. Nichols, 188 Va. 857, 867-68, 51 S.E.2d 144, 148 (1949).

The Becks' primary argument is that there was "nothing in the public land records which would place the title examiner on notice that the newly recorded rights of way resulted" in an adverse impact on the intended use of the property.  In short, the Becks assert that because the alleged misrepresentation of material facts was not an issue of title, it was outside the scope of the title examination and would never have been revealed by a title examination.  The Becks correctly characterize the scope of a title examination; however, in conducting the title examination, the Becks' settlement attorney would or should have discovered the

7

existence and location of the Rappahannock easement.  The settlement attorney's knowledge is imputed to the Becks.[2] Yamada v. McLeod, 243 Va. 426, 433, 416 S.E.2d 222, 226 (1992).  With such imputed knowledge, the Becks were in a position to determine whether the easement interfered with their use of the property because they, like Smith, knew the intended location of their home.  Thus, the trial court correctly held that the Becks were not entitled to rely on Smith's misrepresentation.

For the stated reasons, we will affirm the judgment of the trial court in favor of Smith on the fraud count and reverse the judgment of the trial court in favor of Smith on the breach of contract count, reinstate the jury verdict awarding the Becks $30,900 in compensatory damages and $3,000 in consequential damages, and enter final judgment.

Affirmed in part,
reversed in part,
and final judgment.

---

[2] Because we deal here with imputed notice derived from an independent investigation, the decisions in Adams v. Seymour, 191 Va. 372, 380, 61 S.E.2d 23, 27 (1950), and Bossieux v. Shapiro, 154 Va. 255, 261, 153 S.E. 667, 668 (1930), holding that constructive notice of duly recorded instruments will not defeat a fraud claim are inapplicable.