## CIRCUIT COURT OF FAIRFAX COUNTY

Lawrence Layman et al.

v.

David Friedlander et al.

Case No. (Law) 211047

April 1, 2003

BY JUDGE ARTHUR B. VIEREGG

This case came before this Court for argument of the demurrer of Defendant First American Title Insurance Company ("First American") to the motion for judgment filed by the Plaintiffs, Lawrence Layman, *et al.* In this suit, Plaintiffs have filed a twenty-one count motion for judgment against multiple parties. Plaintiffs seek damages as a consequence of their purchase of improved real estate in Fairfax County that is located in a 100-year flood plain. Plaintiffs allege they were not informed of the location of the property in the flood plain by either First American or its agent and co-defendant, L&L Title & Escrow, Ltd. ("L&L"). In Count XX, denominated "Negligence," Plaintiffs alleged that First American thereby breached statutory and common law duties owed to the Plaintiffs. In Count XXI, denominated, "Breach of Contract," Plaintiffs seek damages for a breach of First American's title insurance policy.

Pursuant to First American's motion craving oyer, the parties agreed during oral argument that the First American policy would be made part of the pleadings for the purposes of First American's demurrer under consideration. The settlement on the property in this case allegedly took place on February 26, 2002. The parties have furnished a First American Policy dated February 27, 2002, No. CEO 300183 ("Policy").

The Plaintiff also furnished another First American Policy, No. EML 275329. This was apparently a commitment. If so, the policy does not purport to insure, or agree to insure, the property's location in a flood plain. Its terms of coverage differ markedly from those in Policy CEO 300183. Although the parties addressed this commitment in oral argument, it is plain from the Plaintiffs' pleadings that their breach of contract claim is relegated to the breach of Policy CEO 300183. Plaintiffs do not allege a breach of the commitment.

"A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged. On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). "The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [motion for judgment] but may only determine whether the factual allegations are sufficient to state a cause of action." *Riverview Farm Assoc. Va. Gen. Partnership v. Board of Supervisors of Charles City County*, 259 Va. 419 (2000).

## Negligence

Plaintiffs first contend that First American owed Plaintiffs a duty of care, separate and apart from any contractual duties. In a breathtaking misstatement of the law, the Plaintiffs represented to this Court on brief:

> Defendant owed Plaintiffs duties not derived from the Agreement. In particular, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract.

Plaintiff's Response, at 2, *citing Ward v. Ernst & Young*, 246 Va. 317, 435 S.E.2d 628 (1993). *Ward* does not support Plaintiffs' position or the foregoing statement. Moreover, *Ward* holds that where, as here, economic injury is the basis for a negligence action, a plaintiff is relegated to his action in contract and a negligence action is not available. Accordingly, in *Ward*, an accounting malpractice suit, the Virginia Supreme Court affirmed the trial judge's dismissal of the plaintiff's negligence action. The Virginia Supreme Court,

12

however, reversed the trial court's sustaining of the defendant accounting firm's demurrer to the plaintiff's third-party breach of contract action.

Without a speck of legal authority, Plaintiffs argue that Va. Code § 38.2-4601.1 creates duties of a title insurer. The argument is baseless. First, the statute does not purport to create duties at all. Rather, by its plain language, it purports to define what "a title agency or agent" means. Second, that definition plainly does not apply to a title insurer such as First American, but instead it purports to apply to one who might serve First American as a title agency or agent. Third, there is no suggestion that what Plaintiffs contend are duties are duties that by operation of law are written into all insurance policies.

Plaintiffs next make the statement: "A property's existence in the flood plain affects insurability of title." This statement on brief is devoid of any authority, statutory, decisional, or otherwise. In the end, in the absence of allegations of fraud, a claim not advanced against First American, even if this unsupported and doubtful representation to this court could be proven, it is plain that Plaintiffs have sued First American for disappointed economic expectations, the difference in the value of the property they contracted for and received. Negligence, in accordance with *Ward v. Ernst & Young*, and a plethora of Virginia Supreme Court decisions, is negated by the facts alleged by Plaintiffs.

## Breach of Contract

Plaintiffs also contend that First American breached its title insurance policy. However, since plaintiffs do not allege that First American failed to issue a title insurance policy consistent with its commitment, plaintiff's breach of contract action depends on whether or not plaintiff has pleaded facts demonstrating that First American breached the terms of the Policy.

The Policy, however, plainly excepts from coverage any liability for loss or damage by reason of the fact that the property was located in Flood Zone A. *See*, Policy, Schedule B(10).

Accordingly, it is plain that Plaintiffs have not pleaded an actionable claim against First American for breach of the policy. Plaintiffs claim, in effect, that they received the policy after the settlement and that, had they known the property was in a flood plain, they might not have gone to settlement or would have required a different policy. These circumstances might be a predicate for parties' owing such a duty of disclosure to them, but the facts pleaded do not make out a breach of contract action against First American under the policy.

*Conclusion*

For the reasons set forth above, First American's demurrer to Plaintiffs' Count XX and Count XXI are sustained without leave to amend.

October 3, 2003

BY JUDGE KATHLEEN H. MACKAY

This matter comes before me on Defendants Friedlanders' Demurrer to Plaintiffs' Second Amended Motion for Judgment.

I have enclosed an order whereby I am overruling the Demurrer as to Count I: Fraud, Count III: Breach of Contract, and Count IV: Violation of Virginia Consumer Protection Act. I am sustaining the Demurrer with no leave to amend as to Count II: Constructive Fraud. The order also has a provision specifically stating that the Second Amended Motion for Judgment was properly filed. I thought such a provision wise, given the somewhat confused procedural history on the various filings of motions for judgment.

The various counts of Plaintiffs' Motion for Judgment have been argued and briefed extensively in this case, so this opinion will be brief and to the point.

*Fraud*

The party asserting a cause of action for actual fraud will bear the burden of proving by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Richmond Metropolitan Auth. v. McDevitt,* 256 Va. 553, 557-58, 507 S.E.2d 344 (1998).

The crux of Defendants' Demurrer is that Defendants did not make misrepresentations to the Plaintiffs. There was never direct communication between Plaintiffs and Defendants; that is, all communication was made via the broker, NRT.

*Imputed Knowledge Between Real Estate Agent and Principal*

Defendants argue that Va. Code § 54.1-2142 has abrogated the concept of imputed knowledge between real estate agent and principal. The Code states:

A. A client is not liable for (i) a misrepresentation made by a licensee in connection with a brokerage relationship, unless the client

14

knew or should have known of the misrepresentation and failed to take reasonable steps to correct the misrepresentation in a timely manner, or (ii) the negligence, gross negligence, or intentional acts of any broker or broker's licensee.

B. Clients and licensees shall be deemed to possess actual knowledge and information only. Knowledge or information among or between clients and licensees shall not be imputed.

Defendants believe that Plaintiffs have failed to plead the elements needed to impute knowledge from a real estate agent to the principal. Plaintiffs cite several cases in their reply memo that impute the fraud of an agent to a principal, however, these cases do not deal with our specific situation, i.e. the relationships discussed are not between real estate agents and their clients.

Plaintiffs argue that their Second Amended Motion for Judgment states that Defendants knew of these misrepresentations and instructed their agent to make these misrepresentations. See Paragraphs 22, 23, 25, 26, 28, 31, and 33. These allegations are more specific than the statements in Plaintiffs' original Motion for Judgment. Plaintiffs' allegations are sufficient to impute knowledge from agent to principal, and, as such, fall within the exception noted in Va. Code § 54.1-2142(A)(i).

*Actual Knowledge*

Plaintiffs allege that Defendants should have known that flood insurance was required because Plaintiffs' intended lender was federally regulated. Defendants argue that whether a particular lender would require flood insurance is not a fact, but an opinion. FEMA handbook carves out several exceptions where a federally regulated lender would not need to require flood insurance on the property.

Plaintiffs' Second Amended Motion for Judgment contains sufficient allegations regarding Defendants' knowledge of the misrepresentations. At the demurrer stage, I would agree with Judge Klein's analysis that it is appropriate for these issues to be made clear at trial.

*No Reliance*

Defendants also believe that Plaintiffs are not entitled to rely on any alleged representations because they undertook their own investigation as to flood insurance. Defendants argue that under Beck v. Smith, 260 Va. 452, 457, 538 S.E.2d 312 (2000), the buyer is charged with the knowledge the investigation reveals, or, if the investigation is incomplete, the knowledge that

would have been revealed had the investigation been pursued diligently to the end. Therefore, the buyer can no longer rely on the statements of the sellers' agent.

Plaintiffs argue that Defendants Friedlander instructed their agent to make misrepresentations to the Plaintiffs regarding the need for flood insurance. *Beck* is inapplicable in this situation because *Beck* did not involve fraud in the inducement and, in the instant case, the need for flood insurance did not change from the date of contract ratification through the date of settlement.

Plaintiffs also argue that Defendants made misleading statements intending to divert the Plaintiffs and that therefore Defendants should not be able to hide behind the doctrine of caveat emptor. The Defendants engaged in conduct that kept the Plaintiffs from making further inquiries or investigations. When the Plaintiffs' agent asked Begelman whether flood insurance was required, she replied, "No." Also, the survey, along with the accompanying promotional brochure, provided by Defendants to Plaintiffs stated that the property was located outside of the floodplain.

This case appears to fall directly within the *Armentrout* exception to the caveat emptor doctrine. In *Armentrout*, the Court held that sellers had diverted the purchaser from making further inquiries when they assured them that the septic system "checked fine" and that "everything works fine" when, at the same time, they were aware of the sluggish nature of the system and the stench it emitted. Similarly, Begelman as instructed by the Friedlanders, told Plaintiffs' agent that no flood insurance was required even though, according to Plaintiffs' allegations, at the time, she knew the property was located in a floodplain and flood insurance would be required. Therefore, Defendants' caveat emptor argument fails and Plaintiffs have sufficiently alleged reliance.

## Constructive Fraud

The elements of a cause of action for constructive fraud require a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently and that the injured party was damaged as a result of his reliance upon the misrepresentation.

Thus, the issue in the instant case is whether Defendants had a duty to investigate and to disclose to Plaintiffs whether flood insurance was needed. Defendants are the sellers. Given the above analysis of the fraud elements, it does not appear that the Defendants had a duty to inform and investigate, but had only a duty not to intentionally mislead through their statements. As such, Defendants' Demurrer as to the Constructive Fraud claim should be sustained, as Plaintiffs have alleged only intentional misrepresentation.

16

*Breach of Contract*

Plaintiffs allege that the property is not in the condition it was on the date the contract was executed. Defendants argue that the Contract contains a disclaimer and that there is no provision where Defendants warrant the items Plaintiffs are contending constitute a breach. The Contract requires that Friedlanders deliver basic systems of the dwelling in "normal working order" and that the Property will be in "substantially the same Condition as on the Contract Date." See Sales Contract, Paragraph 3.

Plaintiffs allege that the plumbing, heating, and electrical systems were not in good order. Plaintiffs have one paragraph in the Amended Motion for Judgment alleging the condition (Paragraph 17, Second Motion for Judgment):

> Significant work was required to restore the basement living area, including work for which a county inspection was not obtained and work for which neither a permit nor an inspection were obtained. Additionally, the basement wallboard was soaked but not replaced. Wooden wall components and studs were water soaked but not replaced. The air conditioner was damaged; the blower motor was water soaked. A control panel on the furnace allegedly was replaced. Electrical upgrades were secured without County inspection.

*Id.*

Plaintiffs allege numerous other conditions or breaches that were not apparent from the face of the original Motion for Judgment. The Friedlanders made flood-related repairs without obtaining an inspection from Fairfax County; this is a violation of statute and is thus a per se violation of the Contract. Also, the violations of the building code or Fairfax County code violations stemming from the repairs should constitute a breach as well.

*Virginia Consumer Protection Act Violation*

Plaintiffs allege that the Friedlanders misrepresented the flood zone classification, the need for flood insurance, the flooding of the basement, and the lack of floodproofing by Fairfax County.

Generally speaking, Plaintiffs' new allegations as to the Friedlanders suffuse the entire Second Amended Motion for Judgment such that the Virginia Consumer Protection Act Count survives demurrer.

*Order*

This cause comes on before the court on Defendants Friedlanders' Demurrer to Plaintiffs' Second Amended Motion for Judgment, and, it appearing to the court that the parties have briefed and argued the Demurrer, the Court does adjudge, order, and decree that (1) Plaintiffs' Second Amended Motion for Judgment was properly filed and (2) Defendants' Demurrer to Counts I, III, and IV is overruled and Defendants' Demurrer to Count II is sustained with no leave to amend.