## CIRCUIT COURT OF LOUDOUN COUNTY

VMC Satellite, Inc.

v.

Stevens & Associates et al.

May 19, 2005

Case No. (Chancery) 21421

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on March 28, 2005, for argument on the Demurrer and Plea in Bar of the Defendants, Stevens & Associates; Fairclough Stevens & Associates, L.L.P.; Craig Stevens, t/a Stevens & Associates; Craig Stevens; and Biff Fairclough (hereinafter "SA," "FSA," "Stevens, t/a SA," "Stevens," and "Fairclough").

After consideration of the argument of counsel and for the reasons set forth below, the Demurrer and Plea in Bar are overruled. Counts I, IV, and VII are to be nonsuited at the request of the Plaintiff, VMC Satellite, Inc. (hereinafter "VMC").

The facts alleged in the Amended Motion for Judgment are as follows. VMC sells satellite television goods and services through its website at http://www.vmcsatellite.com. VMC and Stevens, t/a SA, entered into a Stevens & Associates Agency Agreement Terms and Conditions (hereinafter "the Agreement") in May 2001. Stevens, t/a SA, agreed to solicit VMC's products and/or services through multiple advertising services. In conjunction with the Agreement, Stevens, t/a SA, was given access to VMC's "(a) marketing methods, techniques, and strategies; (b) business plans, methods, concepts, and strategies; (c) revenue models and profit margins; (d) advertising and marketing text; and (e) sales and order information." VMC considers this information to be "trade secrets."

FSA is the successor-in-interest to SA. In June 2001, FSA created its own website (http://www.thedishtv.com) to sell satellite television goods and services. FSA allegedly used the information garnered through the Agreement with SA to create said website in direct competition with VMC.

VMC seeks judgment against Stevens, t/a SA, FSA, and Fairclough, jointly and severally, for violation of the Virginia Uniform Trade Secrets Act as follows: (1) temporary and permanent injunctive relief; (2) attorney's fees and costs; (3) creation of a constructive trust; (4) compensatory damages not to exceed $1,000,000.00; (5) punitive damages in the amount of $350,000.00; and (6) other relief as the Court deems appropriate.

VMC seeks judgment against FSA for breach of contract in the amount of $1,000,000.00. VMC seeks judgment against Stevens, t/a SA, for breach of contract in the amount of $1,000,000.00.

VMC seeks judgment against FSA for fraud as follows: (1) attorney's fees and costs; (2) creation of a constructive trust; (3) compensatory damages not to exceed $1,000,000.00; (4) punitive damages in the amount of $350,000.00; and (5) other relief as the Court deems appropriate.

VMC seeks judgment against Stevens, t/a SA, for fraud as follows: (1) attorney's fees and costs; (2) creation of a constructive trust; (3) compensatory damages not to exceed $1,000,000.00; (4) punitive damages in the amount of $350,000.00; and (5) other relief as the Court deems appropriate.

VMC seeks judgment against Stevens and Fairclough for conspiracy to injure another in trade, business, or profession as follows: (1) temporary and permanent injunctive relief; (2) attorney's fees and costs; (3) creation of a constructive trust; (4) compensatory damages trebled not to exceed $3,000,000.00; (5) punitive damages in the amount of $350,000.00; and (6) other relief as the Court deems appropriate.

## Demurrer

On demurrer, the Court must "consider as true all material facts alleged in the bill of complaint, all facts impliedly alleged, and all reasonable inferences that can be drawn from such facts." *Riverview Farm Assocs., Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000). "A demurrer does not test matters of proof and, unlike a motion for summary judgment, does not involve evaluating and

deciding the merits of a claim." *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 227, 541 S.E.2d 909, 914 (2001).

The Plaintiff raises facts that, if considered as true, provide an adequate legal basis for the numerous claims presented.

## Count II: Virginia Uniform Trade Secrets Act

Where courts have found claims preempted by the Virginia Uniform Trade Secrets Act (hereinafter "VUTSA"), they have already established that the information in issue is a trade secret. *Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652 (E.D. Va. 2002). A trade secret is defined as "information that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Va. Code Ann. § 59.1-336.

Here, VMC has alleged that FSA's website contains duplicative text and is in direct competition with their own website. The website was created with information obtained during the course of the Agreement between the parties. The Defendants were given access to VMC's marketing methods; business plans, methods strategies, concepts; revenue models and profit margins; advertising and marketing text; and sales and order information.

## Counts III and V: Breach of Contract

The elements for a breach of contract claim are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610 (2004). Counts III and V allege all three elements.

The parties entered into the Agreement in May 2001. SA was given access to VMC's marketing methods; business plans, methods strategies, concepts; revenue models and profit margins; advertising and marketing text; and sales and order information. VMC refers to this information as their "trade secrets." SA agreed not to use, disseminate, or disclose the confidential or proprietary information (*e.g.*, source code, know how, trade secrets, customer lists, pricing strategies, marketing and business plans, vendor info, and plans, strategies and prospects). As successor-in-

interest of SA, FSA assumed all of SA's rights and obligations under the Agreement.

FSA created its own website to sell satellite television goods and services using duplicative text of VMC's website in June 2001. In launching its own satellite television service, FSA used advertising methods, techniques, and strategies; business plans, methods, concepts, and strategies; revenue models and profit margins; advertising text; and sales and order information derived from VMC's business.

VMC alleges that it "has been damaged and continues to be damaged" in its reputation, business, and/or profession by the Defendants' actions.

### Counts VI and VIII: Fraud

"An action for fraud requires a showing that there was a false representation of a material fact, made intentionally and knowingly with the intent to mislead, and relied upon by the party misled to his detriment." *Beck v. Smith*, 260 Va. 452, 457, 538 S.E.2d 312 (2000). Generalized, non-specific allegations are insufficient to state a valid claim of fraud. *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 493 S.E.2d 516 (1997).

VMC alleges that the Defendants entered into the agreement without the intent to fulfill their obligations, but with the express purpose of misappropriating the "trade secrets." Stevens and Fairclough, acting on behalf of SA or FSA, misrepresented that e-mail promotion campaigns were prepared, when they were not, thus affording them more time to misappropriate VMC "trade secrets." As a result of the fraud, VMC suffered significant damages.

### Count IX: Conspiracy

Virginia Code § 18.2-499 provides that:

any two or more persons who combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.

Stevens and Fairclough, acting in their individual capacities, joined to form FSA with the purpose of willfully and maliciously injuring VMC. The Defendants allege in their demurrer that, among other defenses, the conspiracy claim is barred by the intra-corporate/agency immunity doctrine. However, there are sufficient allegations that Stevens and Fairclough acted individually to conspire against VMC. "Any intra-corporate/agency immunity defense requires a factual determination as to whether the acts complained of were within the scope of the alleged agency relationship" and cannot be resolved on demurrer. *PJS Associates, L.P. v. Cosby*, 13 Cir. LF24201 (City of Richmond Cir. Ct. 2000); *Singer v. Dungan*, 1992 WL 884986 (Fairfax County Cir. Ct. 1992); *Mike's Madness v. Mason*, 1990 WL 751392 (Loudoun County Cir. Ct. 1990).

### Plea in Bar

The Defendants argue in their Plea in Bar that paragraph 8(a) of the Agreement bars the present action. Paragraph 8(a) states in pertinent part: "[a]ny action by either party must be brought within six (6) months or be deemed waived." VMC argues in its Memorandum in Opposition that paragraph 8(a) is unenforceable because of fraudulent inducement to enter into the Agreement, the paragraph is ambiguous, and cannot bar claims raised after July 8, 2001.

"[F]raud in the procurement of any contract . . . makes it void and unenforceable." *Moseley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 172 (1963); *Packard Norfolk v. Miller*, 198 Va. 557, 564, 95 S.E.2d 207 (1956) ("Because of the fraud practiced in the procurement of the contract, the entire instrument – the whole contract – is rendered voidable at the instance of the defrauded party."). VMC alleges actual fraud against the Defendants in procuring the Agreement; therefore, paragraph 8(a) would be unenforceable.

Additionally, the language of paragraph 8(a) is ambiguous and does not state when the six-month limitation on actions will begin to run.

### Conclusion

Accordingly, the Defendants' Demurrer and Plea in Bar are overruled. The Defendants are directed to file an Answer and Grounds of Defense to the Amended Bill of Complaint within fourteen days of the date of this opinion letter.