COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Friedman
Argued at Norfolk, Virginia

UNPUBLISHED

ENTREPRENEUR DREAM TEAM

v.        Record No. 0546-22-1

ANCHOR ASSETS V, LLC AND
  COMMONWEALTH ASSET SERVICES, LLC

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
MARCH 7, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Henry W. McLaughlin (Law Office of Henry McLaughlin, P.C., on
briefs), for appellant.

David M. Zobel (Sykes, Bourdon, Ahern & Levy, P.C., on brief), for
appellee Anchor Assets V, LLC.

No brief or argument for appellee Commonwealth Asset Services,
LLC.

Entrepreneur Dream Team ("Entrepreneur") appeals a final order granting summary

judgment to Anchor Assets V, LLC ("Anchor Assets") and dismissing Entrepreneur's claim for

damages from loss of equity in foreclosed property.

Entrepreneur defaulted on a loan secured by a deed of trust.  This appeal concerns

whether the trustee's noncompliance with a recording provision in the deed of trust precluded the

lender from foreclosing.  There is no dispute that the trustee Commonwealth Asset Services,

LLC ("CAS")[1] did not comply with the deed of trust provision ("Paragraph 18") requiring it to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] CAS did not participate in this appeal.  Before the summary judgment hearing, the court
dismissed as settled Entrepreneur's claim against CAS for breach of fiduciary duty.  Despite
naming CAS in its notice of appeal, Entrepreneur did not assign error to the court's dismissal of

record a notice of default in public land records.  The lender Anchor Assets foreclosed nevertheless, after providing Entrepreneur with several copies of that notice of default by certified and first-class mail and multiple opportunities to cure.  Additionally, CAS sent Entrepreneur a notice of the foreclosure date in accordance with the applicable statute in effect at the time.

Entrepreneur contends the court erred by finding that compliance with Paragraph 18 was not a precondition of foreclosure.  Specifically, in its first two assignments of error, Entrepreneur challenges the court's findings that Paragraph 18 did not require Anchor Assets to provide a notice of default and did not require the trustee to record that notice in public land records before foreclosure.

The third assignment of error contests the court's finding that Entrepreneur's knowledge that Anchor Assets started foreclosure proceedings essentially "mooted" any contention that Entrepreneur was nevertheless entitled to recordation of the notice of default in public land records.

Fourth, Entrepreneur contends the court erred in finding that it did not show any harm suffered from the trustee's failure to record the notice of default.  Entrepreneur contends that it created a jury question about its ability to cure the default and prevent foreclosure if the notice had been recorded, a prerequisite to recovery under *Young-Allen v. Bank of America*, 298 Va. 462 (2020).

Because Entrepreneur failed to create a genuine dispute for trial that it suffered harm from any noncompliance with the deed of trust, we affirm the grant of summary judgment to Anchor Assets.

---

CAS from the lawsuit and has not raised any issue concerning CAS's nonparticipation in this venue.

BACKGROUND[2]

In November 2017, Anchor Loans, LP ("Anchor Loans") loaned Entrepreneur $104,500 to buy a residential lot on Ballentine Boulevard in Norfolk ("the Ballentine property"). Alexander Battle, as Entrepreneur's president, signed the promissory note and a deed of trust to secure the loan, using the Ballentine property as the security. Anchor Loans subsequently assigned the note and deed of trust to Anchor Assets, but Anchor Loans continued to service the loan.

The note required Entrepreneur to make monthly, interest-only payments of $1,045 for ten months beginning January 1, 2018, followed by a final balloon payment. Although payments were due the first day of each month, Entrepreneur had a ten-day grace period before default. The note did not require notice of default and allowed Anchor Assets to collect interest on the entire unpaid balance. Entrepreneur expressly waived any rights to have Anchor Assets "demand payment of amounts due" or "give notice that amounts due have not been paid" or "obtain an official certification of nonpayment."

The deed of trust addressed default in Paragraph 18. It identified events that constituted default, including "a default in the payment, when due, of principal or interest on the Note or any other sum secured hereby."

Paragraph 18 also addressed Anchor Assets' option, in the event of default, to accelerate the loan and instruct the trustee to foreclose on the property:

> Upon the occurrence of any default under this Deed of Trust,
> Lender may, at its option, declare all sums secured hereby
> immediately due and payable by delivery to Trustee of written

---

[2] In granting Anchor Assets' motion for summary judgment, the court considered the parties' pleadings, affidavits with attached exhibits, and factual matters established by requests for admission. *See* Rule 3:20; Code § 8.01-420(C) (allowing affidavits at summary judgment when the parties are business entities and the amount in controversy exceeds $50,000). Entrepreneur did not dispute that it failed to answer Anchor Assets' requests for admission, and the court deemed them admitted.

declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.

Paragraph 18 further specified that, if Anchor Assets opted to foreclose and authorize a sale, the "Trustee shall provide such notice [of a Trustee's Sale] and shall advertise a Trustee's Sale in the manner required by applicable law."

Entrepreneur made its January 2018 payment, although not until January 19, 2018. Entrepreneur made no further monthly payments.

On May 11, 2018, Anchor Loans sent Entrepreneur a "NOTICE OF DEFAULT AND INTENT TO ACCELERATE," advising that Entrepreneur could cure the default and reinstate the loan by paying $6,844.75 within ten days. Anchor Loans sent the notice by first-class mail and certified mail, return receipt requested. Entrepreneur admitted that both Alexander Battle and Sherry Battle-Edmonds—the registered agent, CEO, and CFO of Entrepreneur—received this notice.

From May through July 2018, Anchor Loans representative Danielle Gates exchanged several emails with Alexander Battle. On May 21, Gates emailed Battle that the foreclosure process had begun. On June 5, she informed him that Entrepreneur could pay $9,320.41 to reinstate the loan, explaining that this amount reflected the note's default interest rate and would be "good through 6/8/18." Battle responded that evening that Entrepreneur had wired $5,000 to Anchor Loans. Gates advised that the payment would "be held in trust towards the reinstatement" because it was insufficient to stop foreclosure, and she inquired when the remaining $4,320.41 would be sent. Battle did not respond.

On June 12, Gates asked again when the outstanding balance would be sent and advised that Entrepreneur had until the close of business on June 14 to complete the payment. Gates

emailed, "If the remaining funds are not received by 5pm 6/14/18[,] the foreclosure will resume and the trustee fees for the reinstatement will increase." Battle did not respond.

On June 14, Gates emailed Battle a reminder that if he did not pay the remaining $4,320.41 by 5:00 p.m., "the noteholders will resume the foreclosure." Battle did not respond.

On June 18, Entrepreneur paid an additional $2,000, which Anchor Loans placed into the trust account. Gates emailed Battle advising that the $2,000 "will be kept in trust" because Anchor Loans "does not accept partial reinstatement" and "the foreclosure process will continue."

Entrepreneur sent another payment of $1,060 on July 23. Again, Anchor Loans placed the money into the trust account because it was insufficient to reinstate the loan. When Battle emailed Gates on July 24 about the payment, Gates acknowledged receipt and advised that the total amount in the trust account was now $8,060. She reminded Battle that the full reinstatement amount as of June 8 had been $9,320.41 and agreed to calculate an updated reinstatement amount; however, she advised that the foreclosure process would have to continue.

On July 25, Gates informed Battle that the new reinstatement amount was $7,403.26, attaching to her email the calculation breakdown. In response to Battle's inquiry about an increase in trustee fees, Gates explained that "[a]s we are now closer to the sale date, [the trustee] fees have increased significantly." Anchor Loans received no further payments from Entrepreneur; Battle and Gates exchanged no further emails.

Both Battle and Battle-Edmonds lived on Boissevain Avenue in Norfolk and had provided that address in Entrepreneur's loan application. At Anchor Assets' request, the trustee CAS sent a foreclosure notice to that address on July 25, 2018, by both first-class mail and certified mail, return receipt requested. The foreclosure notice was addressed to Entrepreneur "c/o Alexander Battle, President." Entrepreneur admitted that Battle received the first-class

version of the foreclosure notice, as well as a United States Postal Service notice that certified mail was waiting for him at the local post office, but he never went to claim the letter. The notice from CAS advised that the foreclosure sale was scheduled for August 14, 2018, at 9:31 a.m. on the front steps of the Norfolk Circuit Court clerk's office.

CAS sent the same foreclosure notice directly to the Ballentine property. No one lived at the Ballentine property, and Entrepreneur never arranged for mail to be forwarded from that address. Consistent with its notice, CAS conducted the foreclosure sale of the Ballentine property on August 14, 2018.

Entrepreneur filed a two-count complaint in September 2020. Count I sought compensatory damages against Anchor Assets for breach of the deed of trust. Entrepreneur argued that Anchor Assets foreclosed without complying with Paragraph 18's requirement for CAS to record any notice of default in public land records. Entrepreneur argued that this recordation requirement was a "precondition[] to foreclosure." Count II sought compensatory damages against CAS for breach of fiduciary duty.

CAS demurred, arguing that Count II failed to state a claim because Entrepreneur did not allege an "ability to cure its default and/or that it informed CAS it had the ability to cure its default prior to foreclosure." The court sustained the demurrer with leave to amend.

In its amended complaint, Entrepreneur added allegations concerning its ability to cure default, including that Battle-Edmonds owned a million-dollar home "free of any mortgage loan." Entrepreneur alleged,

> If anyone on behalf of the lender had notified [Entrepreneur] that a
> foreclosure was intended for August 14, 2018, [Entrepreneur]
> would have prevented the foreclosure . . . by action by
> Battle-Edmonds (as sole owner of [Entrepreneur]) to obtain a loan
> on her home (even, if absolutely necessary to obtain quick funds

- 6 -

from a hard money lender) to pay the loan in full to prevent foreclosure.[3]

In its answer to the amended complaint, Anchor Assets admitted that CAS never recorded a notice of default but denied that this inaction constituted a material breach of the deed of trust. Anchor Assets also denied that Entrepreneur could cure its default by Battle-Edmonds obtaining a loan on her personal home.

Anchor Assets and CAS jointly moved for summary judgment. They argued that, based on the undisputed facts, no genuine issues remained for trial: Entrepreneur defaulted in its payments due under the note; Anchor Assets' loan servicer regularly communicated with Battle to inform him of the specific amounts required to reinstate the loan, but Entrepreneur failed to pay those amounts; CAS sent the required notice of the date and time for the foreclosure sale, which Entrepreneur admitted receiving; and Entrepreneur failed to show that it could bring the loan current, and only claimed that Battle-Edmonds could have taken action to bring the loan current. They further argued that Paragraph 18 did not impose preconditions to foreclosure and therefore CAS's failure to record any notice of default did not affect the validity of the foreclosure sale.

CAS subsequently settled with Entrepreneur and was dismissed from the lawsuit.

Following a hearing, the court granted summary judgment to Anchor Assets. In a letter opinion, the court noted that Entrepreneur did not dispute that the loan was in default and that Battle received the July 25, 2018 foreclosure notice at the address listed in Entrepreneur's loan application.

---

[3] Entrepreneur also alleged it could have used insurance proceeds from a fire on the property, but Anchor Assets' evidence in support of summary judgment showed those funds were either unavailable or insufficient. In its briefing to this Court, Entrepreneur no longer claims that the insurance proceeds would have helped cure foreclosure.

The court determined that Paragraph 18 did not require Anchor Assets to provide a written notice of default to Entrepreneur, but that Anchor Assets did so "at its option." The court also found that Paragraph 18 did not require CAS to record the notice of default prior to any foreclosure sale, stating that "[a] trustee's failure to record a notice that the lender had no obligation to provide but nonetheless did provide, cannot be construed as an unmet condition precedent to foreclosure." The court reasoned that Paragraph 18 was merely "a contractual provision that, if breached, could form the basis of a cause of action for breach of contract." The court found that under the deed of trust, the only "precondition to foreclosure" was an "occurrence of default," which had indisputably occurred due to Entrepreneur's deficient loan payments.

Even assuming CAS was required to record the notice of default before foreclosure, the court still found that summary judgment was warranted under *Young-Allen*, which requires a borrower contesting foreclosure to establish an ability to have cured the default if the lender had complied with all notice requirements. 298 Va. at 471-72. The court concluded that Entrepreneur did not show "that it could have cured its default if the trustee had recorded the notice of default." Quoting the amended complaint, the court noted that Entrepreneur claimed only "that it would have come up with the money to prevent the foreclosure 'if anyone on behalf of the lender had notified [Entrepreneur] that a foreclosure was intended for August 14, 2018.'" The court concluded that Entrepreneur, based on its own admission, did receive written notice of the foreclosure sale by CAS's letter dated July 25, 2018, yet it did not cure the default and therefore created no factual dispute for trial.

In its letter opinion, the court wrote, "If recording the notice of default was, as [Entrepreneur] characterizes, a 'precondition to foreclosure,' [Entrepreneur] must nonetheless allege something that would have been different had the [t]rustee complied with that

- 8 -

precondition." The court found no "genuine issue of material fact regarding [Entrepreneur's] receipt of notice" of the foreclosure sale. The court concluded that "the omission by the trustee to record the May 11, 2018 notice of default[] caused no harm to [Entrepreneur] and cannot support the request for monetary damages to compensate [Entrepreneur] for lost equity in the property."

ANALYSIS

A. Standard of Review

Entrepreneur's first two assignments of error challenge the court's interpretation of the deed of trust. "A deed of trust is construed as a contract under Virginia law . . . ." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 515 (2014) (quoting *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733 (2012)); *see also Jim Carpenter Co. v. Potts*, 255 Va. 147, 155 n.4 (1998). As with all contracts, we review a lower court's interpretation of a deed of trust de novo. *Beeren & Barry Invs., LLC v. AHC, Inc.*, 277 Va. 32, 37 (2009).

Entrepreneur's third and fourth assignments of error concern the court's granting of summary judgment. Entrepreneur argues that genuine issues of material fact remained in dispute. *See* Rule 3:20 ("Summary judgment may not be entered if any material fact is genuinely in dispute."). On appeal, "the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Mount Aldie, LLC v. Land Tr. of Va.*, 293 Va. 190, 196-97 (2017).

B. Assignment of Error 1:
Whether the deed of trust required sending a notice of default to Entrepreneur

Entrepreneur first challenges the court's conclusion that the deed of trust did not require Anchor Assets to provide a written notice of default, but merely allowed Anchor Assets to give this notice "at its option." Entrepreneur contends that although Anchor Assets had the option to accelerate the loan and foreclose, "exercise of [that] option required such notice."

- 9 -

Paragraph 18 of the deed of trust defined events that constituted default, including "a default in the payment, when due, of principal or interest on the Note or any other sum secured hereby."

Paragraph 18 also identified actions Anchor Assets could take upon default, including accelerating the loan and instructing the trustee to foreclose on and sell the property. If Anchor Assets opted to foreclose and authorize the sale, the deed of trust specified that the "Trustee shall provide such notice [of a Trustee's Sale] and shall advertise a Trustee's Sale in the manner required by applicable law." As trustee, CAS sent this foreclosure notice on July 25, 2018, and Entrepreneur admitted receiving it.

The portion of Paragraph 18 at issue here addresses an earlier step—when Anchor Assets chose to accelerate the loan and instructed the trustee to initiate foreclosure:

> Upon the occurrence of any default under this Deed of Trust, Lender may, at its option, declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.

Although capitalized, "Notice of Default" is not defined in Paragraph 18 or elsewhere in the deed of trust. It is also not defined, mentioned, or required in the promissory note secured by the deed of trust. *Cf. Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 121 (2008) (construing a deed of trust provision that expressly required specific terms in a lender's notice of default to the borrower).

"Every deed of trust to secure debts . . . is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law." Code § 55.1-320; *see Squire*, 287 Va. at 515-16. "Basic contract interpretation principles dictate that . . . '[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'"

- 10 -

*Orthopaedic and Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 490-91 (2013) (second alteration in original) (quoting *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 392 (2012)).

Anchor Assets' obligation to send a notice of default to Entrepreneur may be reasonably inferred from Paragraph 18. Although Paragraph 18 provided that Anchor Assets "at its option" could accelerate the loan in the event of Entrepreneur's default, once Anchor Assets in fact exercised this option, it had to perform specific actions to authorize the trustee's foreclosure sale. These actions included "delivery to trustee . . . of written Notice of Default." Delivering this document to the trustee implies first sending it to Entrepreneur. To construe these actions as optional, simply because Anchor Assets' decision to accelerate the loan was itself optional, treats the disputed language in Paragraph 18 as meaningless. *See id.* Additionally, although the promissory note included language purporting to waive Entrepreneur's right to notice of default and amounts due, the notice requirement in Paragraph 18 remained effective because all loan instruments "will be construed together to determine the intent of the parties." *Daugherty v. Diment*, 238 Va. 520, 524 (1989).

In fact, it is undisputed that Anchor Assets did send Entrepreneur a written "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" on May 11, 2018. Entrepreneur admitted that both Battle and Battle-Edmonds received it. The notice advised that Entrepreneur could cure the default and reinstate the loan by paying a certain amount within ten days. Having received that notice, Entrepreneur knew Anchor Assets would accelerate the balance due if Entrepreneur failed to cure its default. Anchor Assets sent several follow-up emails, often in response to Entrepreneur's partial payments that were never enough to reinstate the loan. Anchor Assets kept the partial payments in a trust account and consistently advised Entrepreneur that the foreclosure process would proceed.

Paragraph 18 required Anchor Assets to send the notice of default. Although the court misconstrued this provision as optional, we find no reversible error because Anchor Assets in fact complied with the deed of trust by sending the notice as required.

C.  Assignment of Error 2:
Whether the deed of trust required pre-foreclosure recordation of the notice of default

Entrepreneur next argues the court erred in finding that Paragraph 18 permitted recording the notice of default after foreclosure. Entrepreneur challenges the following sentence from the court's letter opinion: "The deed of trust does not stipulate that such recordation must happen before sale; presumably the trustee can record it at any point in time, even perhaps after the sale."

Entrepreneur faults the court's reasoning because "pre-foreclosure recordation . . . was the only way prospective buyers could determine there had been compliance with the deed of trust's requirement of such recordation." Entrepreneur argues that any ambiguity on the timing of recordation must be construed against Anchor Assets, the drafter of the document, and that summary judgment is not appropriate when "the timing of the recordation language in the deed of trust could be determined by parol evidence."[4]

Paragraph 18 specified that the trustee "shall cause" the notice of default "to be filed for record." The word "shall" imposed a mandatory requirement on the trustee to record in public land records the notice of default that Anchor Assets sent to Entrepreneur. *See TM Delmarva Power, LLC v. NCP of Va. LLC*, 263 Va. 116, 121 (2002) (stating that "the word 'shall' is primarily mandatory in effect" when used "in a will, a contract, or a statute" (quoting *Pettus v. Hendricks*, 113 Va. 326, 330 (1912))). Although Paragraph 18 does not specify that this

---

[4] Entrepreneur made no proffer of parol evidence to construe the recordation provision of Paragraph 18. Failure to proffer parol evidence constitutes a waiver of the issue for appeal. *Campbell v. Corpening*, 230 Va. 45, 48 (1985).

recordation must occur before foreclosure, the purpose of recording information in land records is to provide at least constructive notice to the public about the legal status of property. *See, e.g.*, *Beck v. Smith*, 260 Va. 452, 457 (2000) (stating that a buyer is on notice of those matters shown by the public land records, but not of matters that are "outside the scope of the title examination"); *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 266 (2021) (noting that a *lis pendens* filed in public land records "provides notice of [a] pending lawsuit to parties who may be interested in the property underlying the suit"). Recording a notice of default after a foreclosure sale, which terminates the borrower's interest in the property and therefore eliminates its opportunity to cure the default, would misinform the public about the legal status of the property.

We note that Virginia's foreclosure statute does not require recordation of notices of default; the statute requires advertising the foreclosure sale as the method for giving public notice about properties encumbered by a loan in default. *See* Code § 55-59.2 (effective July 1, 2018 to September 30, 2019, and now codified as the substantively similar Code § 55.1-322). But the lack of any statutory recordation requirement is not dispositive here; parties are free to include and enforce non-statutory obligations in their contracts. *See Simmons*, 275 Va. at 121-22 (enforcing contractual condition precedent to foreclosure in a deed of trust despite a statutory cure available in former Code § 55-59.1(A)).

Despite Anchor Assets foreclosing without CAS's compliance with the recordation requirement, Entrepreneur failed to show that it suffered any harm from that breach of the deed of trust. *See Young-Allen*, 298 Va. at 470 (holding that a borrower must plead and eventually prove harm from a bank's breach of contract by demonstrating a capacity to have cured the default). Instead, Entrepreneur only argued that, if it had received notice that the foreclosure sale

was intended for August 14, 2018, it would have taken steps to cure the default. There are at least three problems with that argument.

First, recordation of the notice of default would not have informed Entrepreneur of the date of the foreclosure sale. The May 11, 2018 notice of default that should have been recorded said nothing about the time, date, or location of the foreclosure sale. That information came from CAS in its July 25, 2018 foreclosure notice to Entrepreneur.

Second, Entrepreneur is charged with knowledge of the contents of the July 25 foreclosure notice because CAS sent it in compliance with Code § 55-59.1(A), the statute in effect at the time. That statute required the trustee to "give written notice of the time, date[,] and place of any proposed sale in execution of a deed of trust" by mail to the property owner's "last known address as such owner and address appear in the records of the party secured." Code § 55-59.1(A) (effective July 1, 2018 to September 30, 2019). Further,

> Mailing of a copy of the . . . notice . . . to the owner by certified or registered mail no less than 14 days prior to such sale . . . shall be a sufficient compliance with the requirement of notice.

*Id.*[5]

Here, CAS complied with this statutory requirement. Its July 25, 2018 foreclosure notice, which cited former Code § 55-59.1, advised that the foreclosure sale would occur more than 14 days later, on August 14, 2018 at 9:31 a.m., outside Norfolk Circuit Court. Entrepreneur admitted that Battle received both the first-class version of the letter containing the notice and the USPS notice that certified mail was waiting for him at the local post office. Thus, no genuine issue of material fact about receipt of the notice exists. It is of no import that Entrepreneur claimed it lacked actual notice of the foreclosure sale because no one opened or retrieved the

---

[5] Code § 55-59.1 is now codified at Code § 55.1-321 and also provides that mailing a foreclosure notice by certified or registered mail more than 14 days before the sale equates to "sufficient compliance with the requirement of notice."

- 14 -

mailings from the trustee; CAS's compliance with the applicable statute satisfied the notice requirement. *See id.*

Third, the undisputed facts establish that, despite receiving the notice of default and the notice of foreclosure sale, Entrepreneur did not cure the default. Entrepreneur failed to show that recordation of the notice of default would have made any difference. It only represented that Battle-Edmonds would have refinanced her personal home or obtained some other loan if Entrepreneur knew the foreclosure date. But Entrepreneur admitted that it received the notice of the foreclosure date, not to mention ample notice of the default and opportunity to cure, yet it never came into compliance. At the summary judgment hearing, Entrepreneur did not explain why Battle-Edmonds took no action to refinance her home or obtain another loan despite all the other forms of notice established in the record.

Although Paragraph 18 obliged the trustee to record the notice of default before Anchor Assets' foreclosure, we nevertheless affirm because Entrepreneur failed to demonstrate that it suffered harm resulting from this breach.

D. Assignment of Error 3:
<u>Whether Entrepreneur's knowledge that Anchor Assets initiated foreclosure</u>
<u>"mooted" any right to additional notice in public land records</u>

Entrepreneur next contends the court erred by finding that Entrepreneur's knowledge that Anchor Assets had started the foreclosure process "mooted" its right to additional notice in public land records. Entrepreneur argues that "it was a jury question" whether (1) Entrepreneur would have learned of the foreclosure if the notice of default had been recorded and (2) Entrepreneur would have been able to cure the default if notified by recordation.

Entrepreneur admits that it received Anchor Assets' May 11, 2018 notice of default by mail. Nevertheless, in this assignment of error, Entrepreneur essentially insists that it did not have to take this notice seriously unless or until the trustee recorded it in public land records in

accordance with Paragraph 18. That interpretation of Paragraph 18, however, renders meaningless the first step of the lender sending a notice of default directly to the borrower and characterizes that action as having no legal consequence without recordation. Nothing in the loan documents or Virginia law would justify Entrepreneur simply disregarding the May 11 notice until it was recorded, and principles of contract interpretation dictate that no provisions should be construed as meaningless. *See Westmoreland-LG & E Partners v. Va. Elec. & Power Co.*, 254 Va. 1, 11 (1997) ("No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." (quoting *D.C. McClain, Inc. v. Arlington Cnty.*, 249 Va. 131, 135-36 (1995))).

Also unpersuasive is Entrepreneur's contention that a jury should decide whether recordation would have notified Entrepreneur of the August 14, 2018 foreclosure date. It is uncontested that the May 11 notice of default—the document to have been recorded—did not specify the foreclosure date. Accordingly, recording the May 11 notice of default could not have changed Entrepreneur's understanding of the foreclosure date; that information was in CAS's July 25 foreclosure notice, which, as discussed above, was statutorily compliant and thus sufficient to convey notice of its contents.

### E. Assignment of Error 4:
#### Whether summary judgment was appropriate under *Young-Allen v. Bank of America*

Entrepreneur argues the court erred in holding, pursuant to *Young-Allen*, 298 Va. 462, that it failed to create a jury question of whether it was harmed by the failure to record the notice of default.

In *Young-Allen*, a borrower sought rescission of a foreclosure sale based on the bank's breach of a deed of trust. *Id.* at 466. The borrower alleged that the bank did not send her the required contractual notices, including the "right to cure," "the amount that must be paid and

- 16 -

where it must be sent," and "the date by which that figure is good to reinstate/cure." *Id.* at 470. But the complaint "did not allege that [the borrower] had the ability to cure her default" or "that she could have cured her default and prevented the foreclosure sale if she received the notices at issue." *Id.* The Supreme Court held that "[w]ithout such an allegation, the complaint did not establish that the alleged breach caused any harm" and the circuit court appropriately denied the "drastic remedy of equitable recission." *Id.*

Entrepreneur claimed monetary damages, not rescission of the foreclosure sale, premised on a breach of the deed of trust. Nevertheless, Entrepreneur was subject to the same requirement to plead and be able to prove that the breach caused it harm. *See id.* at 469 (noting that rescission is a remedy for breach of contract and therefore has the same underlying elements, including "injury or damage . . . caused by the breach of obligation" (quoting *Ramos v. Wells Fargo Bank,* 289 Va. 321, 323 (2015))). To show harm, Entrepreneur needed to demonstrate its ability to have cured the default and prevent foreclosure if it had received the notice at issue. *See id.* at 470. Here, the court gave Entrepreneur the chance to plead sufficient harm under *Young-Allen*, after sustaining the trustee's demurrer with leave to amend. In its amended complaint, Entrepreneur added allegations attempting to illustrate that the failure to record the notice of default prevented Entrepreneur from averting foreclosure. Specifically, Entrepreneur alleged that because the notice of default was not recorded, no one on behalf of Entrepreneur "had any knowledge of the August 14, 2018 purported foreclosure until after it occurred," and if it had been notified of the foreclosure date, Battle-Edmonds would have refinanced her home or "obtain[ed] quick funds from a hard money lender" to "pay the loan in full to prevent foreclosure."

At the summary judgment hearing, Entrepreneur added that Battle-Edmonds is a "widow of a former circuit court judge" and "she gets notified about things that happen at the clerk's

office if they affect her." Entrepreneur represented that Battle-Edmonds therefore would have become aware of a properly recorded notice in public land records and would have raised and paid sufficient funds to prevent foreclosure.

Entrepreneur argues that these representations created a factual dispute over whether the failure of recordation did it any harm. We disagree.

*Young-Allen* was decided at the demurrer stage of litigation. 298 Va. at 466-67. Both the trial court and Supreme Court were presented with the issue of whether the borrower had alleged sufficient facts that, if true, could support her theories of recovery against the lender. *Id.* at 467-70. Here, by contrast, the parties reached the summary judgment stage. Therefore, on appeal, we are reviewing the court's ruling that Entrepreneur would be unable to prove, as a matter of law, any harm or damages arising from the claimed breach of contract. *See Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 485 (2003) (distinguishing between appellate review of a demurrer and summary judgment rulings). Accordingly, we must consider the entire record—the pleadings, orders, admissions, affidavits, and exhibits—to determine whether Entrepreneur could have proved any harm or damages at trial. *See id.*; *see also* Rule 3:20. Although we review the record in the light most favorable to Entrepreneur, the party against whom summary judgment was granted, we do not simply accept as true all its allegations in the amended complaint, nor Entrepreneur's unsupported representations to the circuit court, but must consider them in the context of the entire record. *See Klaiber*, 266 Va. at 481-83, 485.

To survive summary judgment, Entrepreneur needed to show a genuine factual dispute as to whether something would have been different had the trustee complied with the recordation provision in Paragraph 18. *See* Rule 3:20. We find the record supports the court's conclusion that Entrepreneur would be unable to prove, as a matter of law, that the recordation failure caused it any harm.

In its amended complaint, Entrepreneur alleged that recordation would have notified it of the August 14, 2018 foreclosure date. Entrepreneur would not be able to prove this at trial. As previously discussed, the document to have been recorded did not specify the foreclosure date. Thus, recordation could not possibly have changed Entrepreneur's understanding of the foreclosure date even assuming Battle-Edmonds had particular familiarity with filings in public land records.[6]

Nor did Entrepreneur create a jury question about its ability to cure default. Entrepreneur never alleged, nor presented evidence in opposition to summary judgment, that it could have cured its default if CAS had recorded the notice of default. Instead, Entrepreneur only represented that it would have obtained the money to prevent foreclosure if it had known the foreclosure date. But, again, Entrepreneur is charged with notice of the contents of the July 25, 2018 letter from CAS, which it admitted receiving. That Battle failed to open or retrieve the letter did not create a genuine issue of material fact regarding Entrepreneur's knowledge of the foreclosure sale because CAS sent the letter in compliance with the deed of trust and controlling Virginia law. *See* Code § 55-59.1(A) (effective July 1, 2018 to September 30, 2019) (mailing foreclosure notice more than 14 days before foreclosure sale "shall be a sufficient compliance with the requirements of notice"). "[I]mmaterial facts genuinely in dispute . . . do not preclude the entry of summary judgment." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021).

Moreover, the emails attached to Anchor Assets' summary judgment motion establish that Entrepreneur knew foreclosure was imminent and what was required to reinstate the loan, yet repeatedly failed to pay the requisite amount. Nothing in the record shows that Entrepreneur

---

[6] Furthermore, Entrepreneur's claim that recordation would have notified it of the foreclosure date is inconsistent with the purpose of recording documents in public land records, which is to notify third parties about the legal status of property. *See, e.g.*, *Beck*, 260 Va. at 457; *Givago Growth, LLC*, 300 Va. at 266.

- 19 -

would have done anything differently, such as have Battle-Edmonds refinance her home, if only the trustee had recorded the May 11, 2018 notice of default. Entrepreneur took none of these actions despite receiving notice of the foreclosure date.

Finally, we note that many of the undisputed facts supporting summary judgment came from Entrepreneur itself, by virtue of its wholesale failure to respond to Anchor Assets' requests for admission. *See supra* n.2. By not responding, Entrepreneur made crucial admissions concerning its receipt of the May 11, 2018 notice of default and the July 25, 2018 foreclosure notice. It also admitted to the specific emails that Battle exchanged with Anchor Loans about the default, the reinstatement amounts, and the ongoing foreclosure process.

Given this record, the court did not err in finding that Entrepreneur failed to create a jury question concerning its ability to cure the default, had the notice of default been recorded.

CONCLUSION

For these reasons, we find that the court did not err in granting summary judgment for Anchor Assets and affirm the judgment below.

*Affirmed*.