COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Chaney and Callins
Argued at Hampton, Virginia


NORFOLK AVIATION, LLC

v.      Record No. 1408-23-1

RAFAMEDIA, LLC                                    MEMORANDUM OPINION[*] BY
                                                 JUDGE DOMINIQUE A. CALLINS
                                                         MAY 6, 2025

PHILLIPS AVENUE HOLDINGS, LLC

v.      Record No. 1413-23-1

RAFAMEDIA, LLC


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Gregory A. Giordano (Willcox & Savage, P.C., on briefs), for
appellant Norfolk Aviation, LLC.

Kevin E. Martingayle (Bischoff Martingayle, P.C., on briefs), for
appellant Phillips Avenue Holdings, LLC.

Cary S. Greenberg (Caroline E. Costle; Timothy R. Bradley;
Greenberg Costle & Bradley, PC, on briefs), for appellee.


After discovering that the airplane it purchased was different than advertised, Rafamedia,

LLC, filed an action against Phillips Avenue Holdings, LLC ("Phillips"), and Norfolk Aviation,

LLC ("Norfolk"), on theories of fraud, breach of contract, and respondeat superior. After a

bench trial, the trial court entered judgment in favor of Rafamedia. Both Norfolk and Phillips

appealed. Norfolk and Phillips each challenge the sufficiency of the evidence to sustain the trial

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

court's judgment.  For the reasons that follow, we reverse and enter final judgment in favor of Norfolk and Phillips.

## BACKGROUND

### I.  Rafamedia Purchases Phillips's Piper Malibu 350 Airplane

On or around December 2020, Phillips engaged Norfolk to sell one of its airplanes—a 2018 Piper M350.  Darren Klink, Norfolk's director and sales representative, put together the marketing brochure Norfolk used to advertise the sale of the plane.  Klink developed the marketing brochure by searching the internet for information pertaining to model 2018 Piper M350 airplanes, as "many of them have similar features, similar avionics."  He then used the information he found on the internet to develop the brochure, including a "spec sheet," on which were listed specific avionic features advertised as installed on Phillips's airplane.  Norfolk also included the information contained in the brochure in its online sales listing.  Later that month, Rafamedia responded to the sales listing.

Richard Foreman, the managing member of Rafamedia, sought to purchase an airplane on behalf of the company.  Foreman was an experienced pilot and "pretty knowledgeable about airplanes," having flown airplanes for nearly 50 years and having previously purchased 4 planes.  Foreman searched specifically for a Piper Malibu 2018 model year plane with certain avionic features, including Flight Stream 510, SurfaceWatch, and L3 Stormscope.[1]  Foreman also desired a plane equipped with ADS-B In.[2]

---

[1] According to Foreman's testimony at trial, Flight Stream 510 is "a safety feature and an ease of operation for an airplane"; SurfaceWatch is a safety feature that "provides you any kind of runway incursions, any kind of involvement of traffic that's coming in your direction on the ground . . . [and] give[s] you surveillance area around the airplane"; and an L3 Stormscope "measures the actual intensity of lightning strikes."

[2] According to the evidence presented at trial, ADS-B In is transponder software embedded into an airplane's navigation system, which communicates "finite traffic" and weather information.

On or about the end of December 2020, Foreman saw and responded to Norfolk's listing of Phillips's Piper M350. Foreman began negotiating with Norfolk—and specifically, with Klink—to purchase the airplane. During their communications, Klink sent Foreman a copy of the marketing brochure for the Piper M350, which included the model year and the plane's purported features, components, and avionics systems. According to the brochure, the airplane was a 2018 Piper M350 with all of the features Foreman sought: Flight Stream 510, SurfaceWatch, L3 Stormscope, and ADS-B In. Klink also sent Foreman the airplane's logbooks, which included an equipment list "show[ing] every piece of equipment and avionics that are delivered with the airplane when it was manufactured." Unlike that in the sales brochure, the logbook equipment list did not include the enumerated avionics at issue "because they weren't installed" on the airplane.

Foreman and Klink arranged for a "general inspection of everything" on the airplane "via Zoom," a videoconferencing technology. According to Klink, he did not take any action to preclude Foreman from physically inspecting the airplane; it was Foreman who opted to inspect the plane via Zoom as, for Foreman, "time was of the essence." During the Zoom inspection Klink did not "ignite" the avionics. Foreman later testified that, even had the avionics been "ignited," he would not have been able to tell if the represented avionics were included on the airplane because "they're embedded in the background in the software" and Foreman "took the seller's word for it." He did not inspect the airplane in person prior to its delivery, nor did he have it inspected by a third party. Although at trial Foreman admitted that it was "customary in the industry" to have a physical inspection of an airplane prior to purchase, he instead relied on Klink's representations regarding the plane's avionics because he "trust[s] aircraft salespeople intrinsically."

On December 25, 2020, prior to Rafamedia's purchase of the airplane, Foreman emailed Klink, asking for confirmation that the airplane had the ADS-B In feature.[3] Klink responded, "Yes indeed!" At trial, Foreman explained:

> The two areas of concern with me before closing the transaction, one was [ADS-B] In. And the second was the annual, which every aircraft has to go through an annual inspection. The annual inspection that had been done that had been provided to me in the logbooks, that annual inspection was not done in November of 2020 by an FAA-certified repair station. Very important. So I went back to the seller and I said, You've given me a paper annual . . . . And I said, I can't accept this. So I said--we made a monetary adjustment to the sales price, and we went forward. But this airplane annual was worthless.

But when asked on cross-examination whether he had reviewed the equipment list provided in the logbooks, Foreman answered, "[n]ot really." He acknowledged receipt of "two different equipment lists" and that he only reviewed the equipment list included in the sales brochure. Foreman testified that the representations in the sales brochure and technical specifications included in Norfolk's sales listing are what induced him to buy the airplane.

On December 31, 2020, Phillips and Rafamedia signed an Aircraft Purchase Agreement ("APA"), and Rafamedia paid $940,000 to Phillips for the airplane. Among other things, the APA provided that Rafamedia "reviewed the logbooks and virtually inspected the aircraft to their satisfaction" and that Rafamedia purchased the aircraft "as is" and "where is." The parties collectively agreed to "hold harmless Broker, of all liabilities' [sic], claims, or demands resulting in any extent to the sale of the [a]ircraft." The parties likewise included a merger clause, which provided that the APA "constitutes the entire agreement between the parties" and that "[n]o

---

[3] It is not clear from the record whether this email exchange occurred before or after the Zoom inspection. The record indicates only that this particular email exchange of December 25, 2020, between Foreman and Klink, occurred "prior to closing."

statements, promises, or inducements . . . which are not contained in this written contract, shall be valid or binding."

The airplane was delivered to Rafamedia in January 2021. Soon thereafter, Foreman discovered that the airplane did not have the avionics that Norfolk represented in its sales materials and also that the airplane was manufactured in 2017, not 2018. Foreman immediately contacted Klink about these discrepancies, but the parties were unable to reach a resolution.

II. Rafamedia Sues Norfolk and Phillips

Rafamedia brought suit against Norfolk and Phillips, seeking compensatory damages of $166,095, punitive damages of $50,000, and attorney fees.[4] Rafamedia asserted four claims: fraud in the inducement; constructive fraud in the inducement; vicarious liability, under a theory of respondeat superior, as to Phillips only; and breach of contract, as to Phillips only.

The case was tried before a judge, and the parties presented evidence from various experts and lay witnesses. At the conclusion of Rafamedia's case-in-chief, Norfolk moved to strike the fraud claims against it, citing *Hoover Universal, Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039 (4th Cir. 1987), as "on all fours with this [case]." Norfolk argued that "as an operation of law and an operation of contract" Rafamedia had a duty to inspect, that Rafamedia could not have a "good reliance" on Norfolk's representations, and that "because they didn't inspect [the airplane], because they would have discovered this, they don't have fraud." The trial court denied Norfolk's motion to strike.

Immediately thereafter, Phillips also moved to strike, but only as to Rafamedia's breach of contract claim. Phillips argued that Rafamedia's evidence demonstrated that the airplane

---

[4] Rafamedia initially filed its claims in the General District Court for the City of Virginia Beach, seeking $25,000, interest, and attorney fees. Rafamedia later amended its damages request above the general district court's jurisdictional threshold, and the district court transferred the case to the circuit court. Rafamedia filed an amended bill of particulars upon transfer of the case to the circuit court.

manufacturer, Piper, gave the airplane its 2018 model designation and, thus, failed to establish that Phillips breached its contract with Rafamedia. Additionally, Phillips argued that the evidence did not support Rafamedia's prayer for damages sought. The trial court also denied Phillips's motion to strike.

Phillips declined to put on evidence, but Norfolk did not, and introduced evidence, including witness testimony. At the conclusion of its case-in-chief, Norfolk renewed its motion to strike.[5] The trial court inquired of Rafamedia, "you got any rebuttal?" After a short recess, Rafamedia admitted a single additional exhibit to which neither Norfolk nor Phillips objected.[6] Norfolk and Phillips did not thereafter renew their respective motions to strike. Instead, the trial court ushered the parties directly into closing arguments.

In closing Norfolk again argued that, pursuant to *Hoover* and the Virginia Supreme Court case, *Harris v. Dunham*, 203 Va. 760 (1962), Rafamedia could not claim reasonable and justifiable reliance when it made "a partial inquiry with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the full inquiry."[7] Norfolk also argued that Rafamedia had a "contractual duty" to inspect the plane due to the merger clause in the APA.

In its closing argument, Phillips, too, contended that Rafamedia could not "claim that its reliance was reasonable and justified when it made a partial inquiry with full opportunity of a full

---

[5] Phillips rested without renewing its motion to strike.

[6] Rafamedia's rebuttal evidence, marked as "Plaintiff's Exhibit 6," was identified by Rafamedia as, simply, "the FAA Registry." Of note, the exhibit identifies the year of manufacture of the subject airplane as "2017."

[7] *See Dunham*, 203 Va. at 769 ("[Dunham] either undertook and made a full and independent investigation . . . or made a partial inquiry, with full opportunity of complete investigation . . . , and then elected . . . to act upon the knowledge obtained from his partial inquiry." (first alteration in original) (quoting *DeJarnette v. Thomas M. Brooks Lumber Co.*, 199 Va. 18, 30 (1957))).

- 6 -

investigation." In short, according to Phillips, "there's a big issue here with the reliance."

Phillips's counsel further argued, regarding the breach of contract claim, that "the contract says what it says."

Immediately following closing arguments, the trial court rendered judgment. The entirety of the court's judgment is as stated below:

> All right. Unusual case. Certainly not the kind of thing we see wander through here every day. And I very much appreciate the presentation from both sides.
>
> It is my judgment that a verdict be had by the plaintiff against both defendants jointly and severally in the amount of $85,000. I will not award punitive damages in this case.

The trial court made no findings of fact, nor did it indicate under which theory of liability—fraud or contract—it based its judgment.

Post trial, the court held a hearing to address the issue of attorney fees and to enter a final order. Specifically, the parties argued about the liability basis for the judgment. Notably, the trial court maintained that, regarding its judgment, "all I said was judgment for the plaintiff in the amount of $85,000. I didn't say fraud, no fraud, intentional, unintentional. I just said 'judgment.'" The trial court went on to explain, "these orders don't need to be speaking orders. What you need is a judgment for [Rafamedia] in the amount of $85,000." Although Phillips's counsel expressed some concern with "not tethering the judgment to any particular counts or anything," ultimately all three parties agreed with the trial court's offer to enter a final order "with . . . less detail." Thereafter, the trial court entered a final order, including an award to Rafamedia of $15,000 in attorney fees, $992.91 in costs, and pre- and post-judgment interest at the judgment rate from December 31, 2020. Norfolk and Phillips appeal.[8]

---

[8] Norfolk's and Phillips's respective third assignments of error challenge the generality of the final judgment, contending that the trial court erred by "failing to differentiate between fraud and contract." Although Phillips raised this concern in the post-trial hearing, both Norfolk and

ANALYSIS

I. Standard of Review

On appeal from a bench trial, we review a trial court's judgment for clear error, setting it aside only if it is plainly wrong or unsupported by the evidence. *See MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017); *see also CSE, Inc. v. Kibby Welding, LLC*, 77 Va. App. 795, 802 (2023). In so doing, "[w]e consider the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party below." *MCR Fed.*, 294 Va. at 457 (alteration in original) (quoting *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 647, 655 (2011)). Indeed, "[w]e 'give the findings of fact made by a trial court that heard the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a jury verdict.'" *Kibby Welding*, 77 Va. App. at 802 (quoting *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 287 (2022)). However, we review de novo a trial court's application of the law to those facts. *Caplan v. Bogard*, 264 Va. 219, 225 (2002); *Koons v. Crane*, 72 Va. App. 720, 732 (2021). It is through the prism of these standards that we now review the trial court's judgment.

II. The Extent and Validity of the Judgment Order

Before we can address the merits of these appeals, we must first consider whether this Court has jurisdiction to hear them. *Evans v. Smyth-Wythe Airport Comm'n*, 255 Va. 69, 73 (1998) ("[I]t is essential to the validity of a judgment or decree, that the court rendering it shall

---

Phillips agreed to the trial court entering the general final judgment, and neither objected to the order based on its failure to differentiate between the fraud and contract claims. Therefore, we hold that the record "affirmatively show[s]" that Norfolk and Phillips abandoned this argument. *See Bajgain v. Bajgain¸* 64 Va. App. 439, 451 (2015) ("[I]n order for a waiver to occur within the meaning of Code § 8.01-384(A), the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his conduct the intent to abandon that objection." (quoting *Kellermann v. McDonough*, 278 Va. 478, 491 (2009))); *see also* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling.").

have jurisdiction of both the subject matter and parties." (quoting *Barnes v. Am. Fertilizer Co.*, 144 Va. 692, 706 (1925))). A reviewing court "always has jurisdiction to determine whether it has subject matter jurisdiction," and "the lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court sua sponte." *Watson v. Commonwealth*, 297 Va. 347, 352 (2019) (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)); *see also Chaplain v. Chaplain*, 54 Va. App. 762, 767 (2009) ("The issue of subject matter jurisdiction may be raised sua sponte by the Court."). Put differently, "subject-matter jurisdiction is the paramount consideration in assessing whether a court has authority to enter judgment, and a judgment will always be void without it." *Watson*, 297 Va. at 352.

Central to the inquiry into our own subject matter jurisdiction here is the validity of the trial court's final order. This is because "[w]e adhere to the principle that a court may not base a judgment or decree upon facts not alleged or upon a right, however meritorious, that has not been pleaded and claimed." *Syed v. Zh Techs., Inc.*, 280 Va. 58, 71 (2010) (alteration in original) (quoting *Hensley v. Dreyer*, 247 Va. 25, 30 (1994)). "A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void." *Willems v. Batcheller*, 78 Va. App. 199, 214 (2023) (quoting *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141 (1981)). Or, as a panel of this Court has stated more plainly, if "the circuit court grant[s] relief not sought, the circuit court lack[s] jurisdiction to grant said relief, and the relief is void." *Id.* at 215.

Rafamedia's amended bill of particulars brought six total claims against two co-defendants, the appellants: two fraud claims, each implicating both Norfolk and Phillips; one breach of contract claim implicating only Phillips; and one vicarious liability claim implicating only Phillips. Rafamedia did not bring claims against Norfolk for either breach of contract or

vicarious liability.[9]  Nonetheless, the trial court held Norfolk and Phillips jointly and severally liable but declined to find judgment under a specific theory of liability.  Recognizing that there is no general requirement that a trial court state its reasons for its judgment, *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015), and that this Court may uphold a judgment for any reason supported by the record, *Haynes v. Haggerty*, 291 Va. 301, 305 (2016), we must still discern whether the trial court entered a valid judgment against Norfolk and Phillips, jointly and severally, pursuant to Rafamedia's pleading and prayer for relief.  No court, including this one, can base its judgment "upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed."  *Ted Lansing Supply*, 221 Va. at 1141 (quoting *Potts v. Mathieson Alkali Works*, 165 Va. 196, 207 (1935)).

Yet, in circumstances where a trial court provides little or no reasoning for its judgment, we "need not determine the precise reason" but "may rely upon any reasonable basis in the record that supports the trial court's decision" to affirm the trial court decision.  *Minh Duy Du v. Commonwealth*, 292 Va. 555, 566 (2016).  Further, we recognize that "[t]he trial court's rulings come to us with a presumption of correctness."  *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022).  Indeed, "[t]he trial court is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'"  *Id.* (quoting *Milam v. Milam*, 65 Va. App. 439, 467 (2015)).  In accordance with this presumption, we consider the posture of the final order before us.

The plain language of the final order is susceptible of several interpretations.  Only one such interpretation, however, renders the trial court's final order valid and not void—that the judgment against Norfolk and Phillips pertains only to Rafamedia's fraud claims.  *See Dobie v. Sears, Roebuck & Co.*, 164 Va. 464, 476 (1935) ("The test of the relief to be granted is not the

---

[9] Moreover, at oral argument on this appeal, Rafamedia conceded that it did not bring, nor could the trial court have sustained, a breach of contract claim against Norfolk.

- 10 -

*case proved, but the case stated in the bill upon which the issue is made up*.").  As we presume

that the trial court knew and correctly applied the law, we conclude that the trial court entered a

valid final judgment finding Norfolk and Phillips jointly and severally liable on the fraud claims

only.[10]  Therefore, we have jurisdiction to hear these appeals and, accordingly, we address the

appellants' arguments concerning Rafamedia's fraud claims.[11]

### III.  Fraud in the Inducement

Rafamedia asserted a claim of fraud in the inducement against Norfolk and Phillips,

alleging that both parties "knowingly and intentionally" provided false information about the

avionics and model year of the airplane and that they did so to induce Rafamedia to purchase the

airplane.  Norfolk and Phillips each contend that the trial court erred by failing to grant their

respective motions to strike, and further, erred in granting judgment against them, because the

evidence was insufficient to establish fraud as a matter of law, as Rafamedia could not have

---

[10] Our dissenting colleague spends much time challenging our recognition that the final judgment *must* have held both Norfolk and Phillips jointly and severally liable on Rafamedia's fraud claims in order that the final order be valid.  Additionally, our dissenting colleague contends that "the majority chooses to analyze" only one of the claims and that we incorrectly rely on the amended bill of particulars.  The parties, however, do not dispute these points.  Indeed, Rafamedia itself admits this conclusion:

> The full context of the record indicates a joint and several fraud
> judgment against Norfolk Aviation and Phillips.  As Norfolk
> Aviation acknowledges, Rafamedia sued Norfolk for fraud and did
> not sue Norfolk Aviation for breach of contract.  In that context,
> *we must presume that the trial court's joint and several verdict*
> *against Norfolk Aviation and Phillips was for fraud*.

(Emphasis added).  Because the fraud claims were the only claims Rafamedia asserted against both Norfolk and Phillips—and because a court cannot base its judgment against a party on a claim not pleaded against that party—our conclusion is both necessary and clear.  *Syed*, 280 Va. at 71 ("[A] court may not base a judgment or decree upon facts not alleged or upon a right, however meritorious, that has not been pleaded and claimed." (quoting *Hensley*, 247 Va. at 30)).

[11] Because we find that the final order held Norfolk and Phillips jointly and severally liable on solely the fraud claims, we do not address Norfolk and Phillips's assignments of error to the extent they implicate the breach of contract claim.

justifiably relied on the representations made to it by Phillips through its agent, Norfolk. Rafamedia responds that it sufficiently and substantially proved its claims of fraud against both appellants, including by proving that Norfolk and Phillips admitted to making false statements of material fact upon which Rafamedia reasonably relied. We agree with Norfolk and Phillips.

### A. Norfolk's Motion to Strike[12]

Norfolk first contends that the trial court erred in denying its motion to strike because Rafamedia failed as a matter of law to prove the elements of fraud since it could not have justifiably relied on the representations made to it by Phillips through Norfolk. We agree.

"[A] motion to strike at the conclusion of the plaintiff's case-in-chief . . . tests whether his evidence is sufficient to prove it." *Boyette v. Sprouse*, 79 Va. App. 558, 573 (2024)

---

[12] We conclude that Norfolk preserved this argument for appeal. Within the context of a motion to strike,

> an appellate court will not review a challenge to the sufficiency of the evidence when a defendant who has chosen to introduce evidence in his or her defense, after the trial court has overruled his or her motion to strike made at the conclusion of the plaintiff's case, does not make either a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict.

*United Leasing Corp. v. Lehner Fam. Bus. Tr.*, 279 Va. 510, 517 (2010). In other words, a party must "inform the circuit court of the grounds upon which he or she relies in making a new motion to strike so that the circuit court has the opportunity to consider the asserted grounds . . . in light of all the evidence presented, including defense and rebuttal evidence." *Id.* at 518.
Even so, "an appropriate argument made during closing, or 'summation,' will preserve a challenge to the sufficiency of the evidence in a bench trial." *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011). Simply stated, if, *in a bench trial*, a defendant "reassert[s] the issues raised in his original motion to strike in his closing argument," the defendant has preserved those issues on appeal. *McDowell v. Commonwealth*, 282 Va. 341, 342 (2011). In so doing, "the sufficiency challenge must be clear enough for the trial court to discern its presence and to be able to distinguish it from an argument on the merits." *Dickerson*, 58 Va. App. at 358.
In its initial motion to strike, Norfolk contended, in relevant part, that *Hoover* is "on all fours" with this case, as the *Hoover* plaintiff failed to prove good faith reliance when it completed only a partial inspection of the property it intended to purchase from the defendant company. Norfolk further argued, "And [the Supreme Court] said under those circumstances, they had a duty to inspect. They didn't have a good reliance on their representation. And because they didn't inspect it, because they would have discovered this, they don't have fraud."

(alterations in original) (quoting *Tahboub v. Thiagarajah*, 298 Va. 366, 371 (2020)).  As granting a motion to strike "is drastic and should not be done unless it is very plain that the court would be compelled to set aside a verdict for [the non-moving party]," a trial court should not sustain the motion "in any doubtful case."  *Id.* (alteration in original) (first quoting *Tahboub*, 298 Va. at 371; and then quoting *Walton v. Walton*, 168 Va. 418, 422 (1937)).  "An appellate court 'review[s] a circuit court's decision on a motion to strike in the light most favorable to the non-moving party, and the non-moving party "must be given the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom."'"  *Butler v. Stegmaier*, 77 Va. App. 115, 124 (2023) (alteration in original) (quoting *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021)).

In Virginia, "[f]raud, whether actual or constructive, is never presumed and must be strictly proved as alleged."  *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 381 (2018) (alteration in original) (quoting *Henderson v. Henderson*, 255 Va. 122, 126 (1998)).  "The burden of proof applicable to fraud, clear and convincing evidence, is higher than a mere preponderance."  *Id.* at 381-82.  Fraud in the inducement occurs in the context of contractual arrangements when one party enters into a binding agreement with another based on the other's

---

Prior to closing arguments, Norfolk renewed its motion to strike.  The trial court did not rule on the motion, but instead invited the parties to introduce additional evidence.  *See* Code § 8.01-384(A) ("No party, after having made an objection or motion known to the court, shall be required to . . . make such objection or motion again in order to preserve his right to appeal.").  Rafamedia introduced a single exhibit on rebuttal.  The trial court then ushered the parties into closing arguments.  In Norfolk's closing argument, it "reassert[ed] the issues raised in [its] original motion," *McDowell*, 282 Va. at 342, contending that, "A plaintiff cannot claim that its reliance is reasonable and justified when it makes a partial inquiry with full opportunity of complete investigation, and elects to act upon knowledge obtained from the partial inquiry.  And that's what we have here."  Rafamedia again referenced *Hoover* as being "on all fours," and cited to *Harris v. Dunham*.  Because Norfolk's sufficiency challenge was clear and substantially similar at the strike and closing stages, we find the issue preserved on appeal.

Phillips, however, did not move to strike Rafamedia's fraud claim.  Therefore, we address only Norfolk's motion to strike.

false representation of a material fact on which the misled party relies in entering into the agreement. *See Ware v. Scott*, 220 Va. 317, 319 (1979) (recognizing that fraud in the inducement generally requires that "the misrepresentation or concealment must have been intended to induce and must, in fact, have induced the formation of the contract"). A claim of actual fraud in the inducement requires that a party prove the existence of "(1) [a] 'false representation,' (2) 'of a material fact,' (3) which induces the contract, (4) 'on which the [other party] had a right to rely,' and (5) results in damages." *Nestler v. Scarabelli*, 77 Va. App. 440, 463 (2023) (second alteration in original) (citations omitted) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362 (2010)). "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *Evaluation Rsch. Corp. v. Alequin*, 247 Va. 143, 148 (1994).

"[T]o establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 246 Va. 365, 374 (1993) (recognizing that "some courts label this requirement 'justifiable reliance'" (quoting *Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984))).[13] "Absent such reasonable or 'justifiable reliance,' no fraud is established." *Sweely Holdings*, 296 Va. at 382 (quoting *Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 246 (2012)). "The legal boundaries of justifiable reliance depend upon the facts of each case." *Id.* at 383. Our Supreme Court has long held that "one who seeks to hold another in fraud must clearly show that he has relied upon the acts and statements of the other." *Dunham*, 203 Va. at 767. However, a claimant

---

[13] Although our dissenting colleague opts to use the term "reasonable reliance," our precedent treats the terms "justifiable reliance" and "reasonable reliance" as synonyms and employs them interchangeably.

"must be held not to have so relied when it appears that he has made his own investigation, whether complete or not, into the subject matter at hand." *Id.*

Thus, as a matter of law, "[r]eliance may not be justified . . . when a potential buyer undertakes an investigation regarding the matter at issue." *Beck v. Smith*, 260 Va. 452, 457 (2000). This is because, "[u]pon undertaking such an investigation, the buyer is charged with the knowledge the investigation reveals, or, if the investigation was incomplete, the knowledge that would have been revealed had the investigation been pursued diligently to the end." *Id.* (collecting cases).

Foreman testified that, although he received two different equipment lists, he only reviewed one—the equipment list "in the brochure." And he admitted that he did "[n]ot really" review that one list. Foreman also acknowledged that "in most cases" it is customary to perform a "physical inspection." Although the evidence at trial demonstrated that a "prebuy inspection" would include verification "that avionics are included that are listed in the logbooks," Foreman participated instead in a "virtual inspection." Klink testified that he did not prevent Foreman from physically inspecting the airplane, and Foreman likewise acknowledged that he was not precluded from conducting a physical inspection prior to purchasing the airplane.

Indeed, here, "nothing was done to throw the purchaser off his guard, or to divert him from inquiry and examination." *Watson v. Avon St. Bus. Ctr., Inc.*, 226 Va. 614, 619 (1984). Thus, we disagree with Rafamedia that this case is analogous to *Armentrout v. French*, 220 Va. 458 (1979). In *Armentrout*, the sellers of a home "attempted successfully to mask [a] foul smell by using fires and cooking odors" during visits, and the purchasers entered into a contract to purchase the home. 220 Va. at 466. Our Supreme Court reiterated that "the seller 'must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make.'" *Id.* (quoting *Horner v. Ahern*, 207 Va.

- 15 -

860, 864 (1967)). The Court held that although purchasers have a duty to make inspections of that "which would excite the suspicions of a reasonably prudent person," the case fell under an exception because the sellers masked any potential inquiries and examinations the purchasers may have had about the odor. *Id.*

Unlike in *Armentrout*, Foreman not only had the opportunity to physically inspect the airplane, but also to inspect the logbooks, which evidence at trial established would have put Foreman, had he reviewed them thoroughly, on notice that the airplane did not contain the desired avionics. The logbooks contained the equipment list, including "every piece of equipment and avionics that [were] delivered with the airplane when it was manufactured," and the equipment list did not show "any of the avionics [Foreman complained] he didn't get" because "they weren't installed." Foreman testified that he received and conducted some inspection of the logbooks, and further, that he acted on at least one discrepancy he found in the logbook. Because the airplane's "annual inspection was not done in November of 2020 by an FAA-certified repair station," Foreman renegotiated the purchase price for the airplane based on that discovery. In other words, Foreman conducted at least a partial investigation.

Foreman was a sophisticated buyer, and was thus, "by virtue of the fact that he investigated partially, bound by all that a complete investigation would have disclosed." *Dunham*, 203 Va. at 768. Indeed, if a purchaser like Foreman "is directed to the sources of information and undertakes an examination of the facts for himself, he is charged with all the knowledge which he might have obtained had he pursued the inquiry diligently to the end." *Watson*, 226 Va. at 619.[14] "He cannot, in such circumstances, complain that he was misled by

---

[14] In dismissing our characterization of Foreman as a "sophisticated buyer" as "not elevat[ing] or diminish[ing] the legal standard applicable to the seller's duty to provide truthful representation," our dissenting colleague misses the point. The element of justifiable reliance does not call into question the *seller's* duty; it assumes a misrepresentation was made. Rather, the element concerns a *buyer's* obligation, if any, to respond diligently to notice potential

the seller's representation, however false it might have been, because he was no longer justified in relying upon it." *Id.*

At the time of the trial, Foreman had been a pilot for nearly 50 years and purchased 4 airplanes prior to his negotiations with Norfolk and Phillips. He was familiar with the process of purchasing airplanes. He knew precisely the type of airplane he wished to purchase and what features he desired to be included. Yet, although he conducted a partial inspection, he failed to pursue a complete one. Moreover, prior to closing he identified at least one discrepancy between the advertising materials and the actual state of the airplane and thus was on notice of the potential of additional discrepancies. *See Metrocall*, 246 Va. at 375 ("[W]hen negotiating or attempting to compromise an existing controversy . . . it is unreasonable to rely on the representations of the allegedly dishonest party."). Thus, Foreman was no longer justified in relying upon any of Norfolk's or Phillips's representations.

*Hoover Universal*—the federal case relied upon by Norfolk in its motion to strike and closing argument—includes facts analogous to the facts presented here. In *Hoover*, Imco decided to sell a process for manufacturing plastic bottles and prepared a handout for prospective buyers, including Hoover, that overstated "the number of bottles that could be produced on a machine per cycle." 809 F.2d at 1041. Imco also sent a "trip report" to Hoover which included the handout with the incorrect information. *Id.* Then, Hoover visited the facility and was shown "machine drawings" relating to the process it sought to purchase. *Id.* Although Hoover had the opportunity to conduct a close inspection of the machines and the drawings, which would have

---

misrepresentation. As our Supreme Court emphasized in *Harris v. Dunham*, a buyer's sophistication and experience with the contract subject renders unreasonable such buyer's reliance on misrepresentation where he engages in "his own investigation, whether complete or not, into the subject matter at hand." 203 Va. at 767 (holding an "experienced businessman" barred from recovery based in fraud where he engaged in a partial investigation into representations of the financial condition of the company he sought to purchase).

disclosed the error, Hoover "voluntarily limited [its] inspection" to a determination of the currentness of the drawings. *Id.* Hoover then brought a fraudulent inducement claim against Imco, contending that it detrimentally relied on the misrepresentation in Imco's handout. *Id.* at 1041-45.

Applying Virginia law, the Fourth Circuit Court of Appeals held that the district court properly granted summary judgment to Imco. "[I]n circumstances where a prudent buyer would have conducted an investigation and, thereby, discovered the seller's misstatement, a buyer who fails to make such an investigation may not assert fraud based on the factual misrepresentation." *Id.* at 1044. As in *Hoover*, here Foreman voluntarily limited his inspection, choosing not to conduct a physical inspection, not to investigate the equipment list from the logbook, and not to question the discrepancies between the equipment list from the logbook and that included in the sales brochure. Notably, Foreman, in reviewing the same logbook wherein he disregarded the discrepant equipment list, identified the "annual inspection" as insufficient, brought it to Norfolk and Phillips's attention, and renegotiated the price of the airplane on that basis. Moreover, even as the facts of *Hoover* are analogous to those presented here, we must emphasize that the principles for which *Hoover* stands are well settled in Virginia law. *See Beck*, 260 Va. at 457 ("Reliance may not be justified, however, when a potential buyer undertakes an investigation regarding the matter at issue. Upon undertaking such an investigation, the buyer is charged with the knowledge the investigation reveals, or, if the investigation was incomplete, the knowledge that would have been revealed had the investigation been pursued diligently to the end."); *Watson*, 226 Va. at 619 ("[I]f a buyer, having received a positive representation of material fact, is directed to the sources of information and undertakes an examination of the facts for himself, he is charged with all the knowledge which he might have obtained had he pursued the inquiry diligently to the end."). Based on these principles, and accepting, as we must, Rafamedia's

evidence that Foreman relied on Norfolk's false representations, we conclude that Rafamedia's reliance was not justified. Thus, Rafamedia's claims of fraud against Norfolk necessarily fail as a matter of law, and we hold that the trial court erred in denying Norfolk's motion to strike.

B. Phillips's Challenge to the Sufficiency of the Evidence[15]

Phillips also challenges the sufficiency of the evidence to sustain Rafamedia's fraud claim, arguing, for the same reasons as Norfolk, that Rafamedia's reliance was not justifiable when it made a partial inquiry and had the opportunity to complete a full investigation. For many of the reasons stated *supra*, we agree with Phillips.

"[T]he standard of review for determining the sufficiency of evidence on appeal is well established." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)). "The reviewing court must examine the evidence in the light most favorable to . . . the prevailing party at trial, and the trial court's judgment will not be disturbed unless it is plainly wrong or without evidence to support it." *Id.* (alteration in original) (quoting *Nolte*, 284 Va. at 90).

Acknowledging this standard, we nevertheless hold that the evidence presented at the bench trial was insufficient to demonstrate that Rafamedia justifiably relied on the representations made by Phillips through Norfolk. As previously discussed, Foreman was a sophisticated buyer who had the opportunity to conduct a full inspection of the airplane prior to purchase, but elected not to. The evidence established that Foreman had the opportunity to compare the equipment list from the logbooks with that provided in the sales brochure, but did not. But based on information provided in the same logbooks, Foreman did make further

---

[15] In its second assignment of error, Phillips asserts, among other things, that the trial court "erred in awarding a judgment in favor of plaintiff when the plaintiff failed to prove the elements of fraud." Phillips made this argument in closing and noted its objection on this basis on the final order. *See* Code § 8.01-384(A). For these reasons, we find Phillips properly preserved this assignment of error.

- 19 -

inquiry, even to the point of renegotiating the sales price. Foreman conducted a "virtual" inspection of the airplane but elected to forego a "customary" physical inspection. Further, the evidence did not establish that Phillips and Norfolk acted in a way to "throw [Foreman] off his guard," *Watson*, 226 Va. at 619, but that Rafamedia possessed the information, access, and opportunity to discover all that a full investigation would have revealed. That it elected to engage in part, but not in full, in such investigation renders its reliance on Norfolk's and Phillips's misrepresentation not justifiable. We hold that the trial court erred in finding the evidence sufficient to sustain Rafamedia's claim of fraud against Phillips.[16]

CONCLUSION

For the foregoing reasons, we hold that the trial court erred in finding the evidence sufficient to sustain Rafamedia's claims of fraud against Norfolk and Phillips. We reverse the judgment of the trial court and enter final judgment in favor of both Norfolk and Phillips.

*Reversed and final judgment.*

---

[16] Norfolk and Phillips both assign error to the trial court's awarding of damages, attorney fees, and in imposing joint and several liability. Because we reverse, holding Norfolk and Phillips are not liable to Rafamedia, we need not address these assignments of error. *See Shifflett v. Hill*, 82 Va. App. 367, 379 n.12 (2024) ("[J]udicial restraint dictates that we decide cases on the best and narrowest grounds available." (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))). The application of judicial restraint here redounds to Norfolk and Phillips's benefit, as, in any event, it appears that these arguments were not preserved for appeal. *See* Rule 5A:18.

Causey, J., dissenting.

This Court must view the evidence in the light most favorable to Rafamedia, the prevailing party below. We ask only whether the verdict was plainly wrong or without evidence to support it. It is not our role to substitute our judgment for that of the trial court. Therefore, I respectfully dissent.

## THE GENERAL VERDICT

This Court is required to review the record for any reasonable basis that could have supported the judgment against the appellants in this case. The majority states that the only claim brought against both parties was fraud and that therefore, the joint and several judgment against both parties must be based on fraud. This analysis neglects Rafamedia's warrant in debt. In its warrant in debt, Rafamedia asserted fraud, breach of contract, and respondeat superior claims against both Norfolk Aviation and Phillips Avenue, without distinguishing between its claims against one or the other, or stating that Rafamedia only wanted a joint judgment against the parties if they were found liable on the same claim. The warrant in debt simply stated, "Fraudulent misrepresentation and/or breach of contract, breach of warranty" and listed both parties as defendants.

It is not for us to say whether the trial court's judgment—for which it used a general verdict—was based on one theory or the other, or a combination of theories against the parties (for instance, a breach of contract claim against one party and a fraud claim against the other). In attempting to ascertain the precise reason for the trial court's verdict, the majority neglects to consider whether the record furnishes *any* reasonable basis for its judgment. *See Minh Duy Du v. Commonwealth*, 292 Va. 555, 566 (2016) (an appellate court "need not determine the precise reason . . . [but] may rely upon any reasonable basis in the record that supports the trial court's decision").

- 21 -

The trial judge in this case used a general verdict, stating only that Rafamedia was entitled to an $85,000 verdict against the defendants, jointly and severally. Nothing bars the trial judge's employment of a general verdict. W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 11.08 (5th ed. 2017). A judge is under no duty to state his or her reasons for entering a verdict. Reviewing such a verdict, this Court will not attempt to ascertain the true reasons for the judge's verdict, but rather, assess whether the record furnishes *any* reasonable basis for sustaining the verdict. *See Minh Duy Du*, 292 Va. at 566 (an appellate court "need not determine the precise reason . . . [but] may rely upon any reasonable basis in the record that supports the trial court's decision"). *See also Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16, 2025) ("Where, as here, the trial court does not make express findings of fact, a reviewing court cannot make its own.").

On April 3, the court announced its judgment and simply stated, "It is my judgment that a verdict be had by the plaintiff against both defendants jointly and severally in the amount of $85,000." Neither defendant objected to the generality of the verdict. At a subsequent hearing regarding attorney fees and the final order, both appellants consented to the trial judge's stated preference for a general order. Therefore, the appellants waived any objection to the generality of this verdict.

In Virginia, a judge does not need to specifically state the factual basis for holding defendants jointly and severally liable if the record supports the decision. Virginia law presumes the correctness of the trial court's rulings and does not require specific factual findings to be articulated. This presumption of correctness applies as long as the record contains credible evidence supporting the trial court's decision. *Caprino v. Commonwealth*, 53 Va. App. 181, 184 (2008). Nothing bars a trial court from using a general verdict to announce joint and several liability, and joint and several liability can apply to defendants who are liable to the plaintiff

- 22 -

under different theories, and who violated separate rights. *Cf. Cox v. Geary*, 271 Va. 141, 152 (2006) (wrongfully incarcerated prisoner suffered only one "single, indivisible injury" that undergirded both a statutorily created right of action against the Commonwealth and a separate legal malpractice claim against his own attorney). It is entirely possible that the joint and several judgment against Norfolk and Phillips was based on a combination of the pleaded claims— including, but not limited to, the possibility of a fraud in the inducement claim against Norfolk and a breach of contract claim against Phillips. In fact, the parties argue these exact theories in their appellate briefs, which belies the majority's conclusion.

Here, the majority concludes that the judgment against Norfolk Aviation and Philips Avenue pertains "only" to Rafamedia's fraud claims. How? There is no factual finding by the trial court on which to base this conclusion. The pleadings state multiple claims pleaded against Norfolk Aviation and Phillips Avenue. Since the trial court did not specify its reasoning, the judgment can be based on any of the pleaded claims or a combination thereof. *See Minh Duy Du*, 292 Va. at 566 (an appellate court "need not determine the precise reason . . . [but] may rely upon any reasonable basis in the record that supports the trial court's decision"). The majority attempts to confine Rafamedia to the allegations in its amended bill of particulars, while ignoring its original pleading in this case, its warrant in debt. In its initial pleading, its warrant in debt, Rafamedia simply stated claims against Norfolk and Phillips for "Fraudulent misrepresentation and/or breach of contract, breach of warranty." Rafamedia's bill of particulars did not replace its warrant in debt but supplemented it. *See* Bryson, *supra*, § 6.02 ("Bills of particulars are *supplemental* motions for judgment." (emphasis added)). The circuit court was within its rights to consider any of the requested grounds, from the warrant in debt, the bill of particulars, or the grounds of defense. But the majority attempts to ascertain the true reasons for the judge's decision by stating that the "*only*" possible basis for the judge's decision is fraud. (Emphasis

- 23 -

added).  This was not a finding of fact by the trial court, and this reviewing Court cannot make its own findings of fact.  *See Bottoms v. Bottoms*, 249 Va. 410, 414 (1995) ("A reviewing court should never redetermine the facts on appeal."); *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) ("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts.").  The judge never stated the reasons for entering the verdict nor was the judge under any duty to do so.  Since the trial court did not specify its reasoning, the judgment can be based on *any* of the pleaded claims or a combination thereof.  *See Minh Duy Du*, 292 Va. at 566 (an appellate court "need not determine the precise reason . . . [but] may rely upon *any* reasonable basis in [*all* of the] record that supports the trial court's decision." (emphasis added)).  Here, as stated above, the record consists of more than the bill of particulars (a supplemental motion) on which the majority so heavily relies, ignoring the initial pleading and other evidence in the record.  The trial court made no reference to the bill of particulars in its general verdict.

The "tug" to redetermine the facts on appeal, as the majority does here, can be compelling, even when appellate review requires a court to analyze the evidence in the light most favorable to the prevailing party and to leave a trial court's finding undisturbed absent plain error.  *Holland*, ___ Va. at ___; *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006).  "And while we may understand and even appreciate the impulse, it should not happen." *Holland*, ___ Va. at ___.  In other words, this Court must rely on all of the record and cannot make its own findings of fact.[17]

---

[17] The majority casts the issue of the final judgment's basis as undisputed between the parties, and quotes from Rafamedia's brief.  But the majority neglects to mention Norfolk Aviation's argument that the judgment was based on breach of contract.  *See* Norfolk Op. Br. 19 ("It is also important to note that the judgment awarded to plaintiff was not based on fraud or fraud in the inducement, but was based on the judge's finding of a breach of contract.").  This statement—as with the majority's quoted statement from Rafamedia—was made in the context of the parties' dispute over the significance of discussions in a post-trial hearing, which we need

Additionally, even if a breach of contract judgment against Phillips Avenue posed any conflict with a verdict against Norfolk Aviation, this conflict would not supply a reason for this Court to disregard Rafamedia's contract claim—this Court would be well within its rights to affirm the judgment as to one party but not the other. *See Gray v. Stuart & Palmer*, 74 Va. (33 Gratt.) 351, 358 (1880) (treating a joint judgment against three parties as a judgment only against two parties because it was void as to a third). In reviewing the record, this Court was required to consider each of Rafamedia's arguments. Among these, the Court was required to consider Rafamedia's argument that Phillips breached a contract with Rafamedia: that repeated misrepresentations about the relevant aircraft's avionics features, and misrepresentation of the aircraft sold as a 2018-model aircraft, gave rise to a breach of warranty or contract.

REASONABLE RELIANCE

As stated in the previous section, this Court must review the record for any possible basis to uphold the trial court's judgment, not limit its analysis to Rafamedia's fraud claims. But because the majority focuses on fraud and the question of reasonable reliance, I assess whether the record supplies sufficient evidence to support the verdict on this basis.

In this case, the evidence available to the trial judge was more than sufficient to support a verdict for Rafamedia on this ground, which the majority chooses to analyze. The record showed that Norfolk Aviation made repeated misrepresentations and gave direct reassurances to Foreman about the presence of valuable avionics on the aircraft, that Foreman declined to perform further independent investigation due to his trust in Norfolk Aviation's statements, and that the standard in-person inspection that he would have otherwise performed would not have

---

not reach due to the majority's disposition of the case. Neither side's statement guides our review here; rather, we have a mandate, under *Minh Duy Du*, to review the record for any reasonable basis to support the judgment. 292 Va. at 566. This includes Rafamedia's argument, made below and on appeal, that their trial evidence also proved a breach of contract by Phillips.

revealed the presence of avionics. The evidence also showed that while Norfolk Aviation advertised the aircraft as a 2018-model plane, it delivered a 2017-model plane. In these circumstances, there was more than enough evidence to support the verdict of the trial court on the grounds that the majority chooses to assess. Under our applicable standard of review, a finding of reasonable reliance necessary to support Rafamedia's fraud claims—which we consider only because the majority limited its analysis to that issue—would not be plainly wrong or without evidence to support it. *See Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022).

I: Standard of Review

We review the sufficiency of the evidence on this issue according to Norfolk and Phillips' second assignment of error, in which they argue that the trial court erred in "awarding a judgment in favor of plaintiff when the plaintiff failed to prove the elements of fraud, breach of contract or any other theory it asserted at trial."[18] This Court's review in such a case is highly deferential: "[T]he trial court's judgment will not be disturbed unless it is plainly wrong or without evidence to support it." *Sidya*, 301 Va. at 37 (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)). We review the trial court's judgment for "clear error." *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017). We "view the evidence and all reasonable inferences arising therefrom in the light most favorable to" Rafamedia, "the prevailing party at trial." *Tel. Square v. 7205 Tel. Square, LLC*, 77 Va. App. 375, 396 (2023) (quoting *McKee Foods Corp. v.*

---

[18] While Phillips Avenue assigned error to the denial of its motion to strike, it failed to preserve this argument for appeal because it did not renew its motion to strike after Rafamedia put on rebuttal evidence. Therefore, the court's denial of Phillips' motion to strike is not subject to our review. Rule 5A:18. *See Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 83 (2010) (failure to renew a motion to strike after additional evidence presented constitutes waiver of prior argument because the new argument "will necessarily raise a new and distinct issue from the one presented by the denied motion to strike"). Phillips Avenue does not ask this Court to apply the "ends of justice" or "good cause" exceptions of Rule 5A:18 to request review of the denial of the unpreserved motion to strike.

*Cnty. of Augusta*, 297 Va. 482, 495 (2019)). *See also Holland*, ___ Va. at ___.[19] "We also presume — even in the absence of specific factual findings — that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (citing *Fitzgerald v. Commonwealth*, 223 Va. 615, 627-28 (1982)). In fact, "[I]t is an appellate court's function to presume that the trial court made the requisite findings of fact to support its decision. And those findings of fact 'will not be disturbed unless plainly wrong or without evidence to support [them].'" *Holland*, ___ Va. at ___ (second alteration in original) (quoting *Jones v. Commonwealth*, 29 Va. App. 503, 512 (1999)). We conduct our review with due deference to the trial court's ability to assess witness credibility and testimony. *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 223 (2023).

---

[19] In a recent case, our Supreme Court discussed the principles of appellate deference at length. The Court stated as follows:

> Appellate Courts are courts of review, not first view. When evaluating factual or credibility determinations, [appellate courts] do not put [themselves] in the shoes of a trial judge and ask, "What would we have done?" Rather, we are confined to a cold record, with its attendant absence of the evidentiary nuances and subtleties observed only by the trial court.
>
> Still, we are not automatons, and may unsurprisingly feel the tug of our own collective experiences pressing us to put aside the appropriate standard of review to impose a result closer to our own notions of correctness. This tug can be compelling, even when appellate review requires a court to analyze the evidence in the light most favorable to the prevailing party and to leave a trial court's finding undisturbed absent plain error or a clear abuse of discretion.
>
> And while we may understand and even appreciate the impulse, it should not happen.

*Holland*, ___ Va. at ___ (reversing this Court's decision to reinstate and grant a motion to withdraw a guilty plea).

- 27 -

II: Analysis

Under the proper standard of review, the evidence in the record of this case was more than sufficient to support a verdict for Rafamedia on the basis of fraud, the ground that the majority chooses to analyze.

Constructive fraud, one of the grounds that Rafamedia pled, presents a lesser burden for a plaintiff than actual fraud. Unlike a claim for actual fraud, a constructive fraud claim does not require that the maker of the false statement have the intent to mislead. *See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 557-58 (1998). Rather, constructive fraud requires only "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of . . . reliance upon the misrepresentation." *Id.* at 558 (alteration in original) (quoting *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295 (1996)). Additionally, the reliance must be reasonable. *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 246 Va. 365, 374 (1993).

The facts of this case narrow the relevant issue for our consideration to that of reasonable reliance. There is no question that Norfolk Aviation, Philips' seller-agent, made multiple misrepresentations regarding the aircraft's inventory. Nor is it disputed that these representations were material, as Foreman provided unrebutted testimony that the presence of the avionics system's advanced tools, including ADS-B In, was important to his decision to purchase the plane. Finally, Foreman clearly suffered damages due to the non-inclusion of the items; according to expert testimony presented at trial, the aircraft was between $125,000 and $140,000 less valuable than it would have been had the parts been present. Thus, the only remaining question is whether it was reasonable for Foreman to rely on the advertisement's inaccurate statements and the seller-agent's explicit confirmation that at least part of what the advertisement said was correct.

- 28 -

Our review of reasonable reliance is guided by our case law. This review is highly fact specific. Virginia law will not protect a party from his or her own "voluntary negligence." *Costello v. Larsen*, 182 Va. 567, 571 (1944). On the other hand, in Virginia, one to whom an inaccurate statement has been made is sometimes entitled to rely on that statement. *See Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 631 (1985) ("[I]n Virginia, one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." (citing *Cerriglio v. Pettit*, 113 Va. 533, 544 (1912))); *Jordan v. Walker*, 115 Va. 109, 116-17 (1913) ("Where it is established that there has been any fraudulent representation by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry.").

Our review of reasonable reliance is attentive to certain factors that Virginia courts have found especially relevant in navigating the question. One important factor has been the buyer's possession, or lack, of information that should put him on notice that the statements may be inaccurate. *See Walker*, 115 Va. at 116-17 (purchaser of company stock was reasonable in relying on misrepresentations in part because he had no reason to suspect that sellers of company were working against him); *Metrocall*, 246 Va. at 375 (misled party's reliance on certain misrepresentations was unjustified where they occurred in the context of the parties' negotiation of a settlement for the misleading party's alleged fraud); *Horner v. Ahern*, 207 Va. 860, 864 (1967) (stating the rule that "*if* a purchaser is given or secures information as to the condition of property such as would excite the suspicions of a reasonably prudent man, he is *then* under a duty to ascertain the true condition for himself and cannot rely upon the representations of the vendor" (emphases added)).

Another important factor that we must consider has been a seller's having taken any actions that dissuaded the purchaser from conducting further investigation himself. *See Armentrout v. French*, 220 Va. 458, 466 (1979) ("[T]he seller 'must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make.'" (quoting *Horner*, 207 Va. at 864)). Finally, our courts have also noted that when a party undertakes his own partial investigation "into the subject matter at hand," such a party is treated as "bound by all that a complete investigation would have disclosed." *Harris v. Dunham*, 203 Va. 760, 767-68 (1962). This Court should consider all these factors in assessing whether there was sufficient evidence to support the reasonable reliance element of Rafamedia's (constructive) fraud claims against Norfolk and Phillips.

III: Analysis of the Record's Evidence of Reasonable Reliance

In this case, the evidence available for the factfinder was sufficient to satisfy our standards for reasonable reliance. A finding that Foreman reasonably relied on Norfolk Aviation's repeated misrepresentations would not have been plainly wrong or without evidence to support it—to the contrary, substantial evidence supported that conclusion. The evidence showed that Norfolk Aviation repeatedly misrepresented the avionics equipment that would come with the aircraft, and the model-year of the relevant aircraft, in a way that a reasonable person would rely on.

First, the material facts included numerous indicators that our courts have valued in determining reliance reasonable. For one, there was no apparent reason why Foreman should have suspected that the seller-agent's advertisements or statements were inaccurate. *See Walker*, 115 Va. at 116-17; *Metrocall*, 246 Va. at 375. Unlike in *Metrocall*, there was no evidence that either party had previously accused the other of dishonesty. *See* 246 Va. at 375. Neither appellant has put forth any convincing reason why the purchaser of an aircraft should expect that

a seller's explicit statements regarding aircraft inventory and model year—in advertisements, and from person to person, via email—are likely to be inaccurate.

The record also showed that Foreman was explicitly reassured by the seller-agent that certain parts listed in the inaccurate advertisement were in fact present in a way that would have led any reasonable buyer to be "diverted" from further investigation. Foreman wrote an email to the seller-agent on December 25, 2020, reading "PLS CONFIRM THAT 718VB HAS . . . ADS-B 'IN'???" Hours later, he received a response that simply read, "Yes indeed!" This response, clearly affirming that the aircraft possessed ADS-B In, was sufficient to support the conclusion that the seller-agent "thr[ew] [Foreman] off his guard" or "divert[ed]" him from making further inquiry. *See Armentrout*, 220 Va. at 466. Viewed in the light most favorable to Rafamedia, it is reasonable to infer that this confirmation not only reassured Foreman as to the presence of ADS-B In, but reassured him as to the accuracy of the advertisement generally. Additionally, it assured that the aircraft was a 2018 because ADS-B In was not available on 2017 models. In ruling in favor of Rafamedia, this credible evidence supports the trial court's decision.

The majority states that the case at hand can be distinguished from *Armentrout* due to the seller-agent's lack of intent to prevent Foreman from conducting further investigation. There are notable differences between this case and *Armentrout*. But significantly, *Armentrout*'s rule is not simply about a seller's deceptive intent. *Armentrout* is about the diversionary effects of certain misleading actions on a reasonable person's decision to investigate. The role that *Armentrout*'s "throw the purchaser off his guard or . . . divert" exception played was as a "very important exception" to the purchaser's duty to investigate further—i.e., inability to reasonably rely—in certain specific cases: when he has received information to "excite the suspicions of a reasonably prudent person." *See id.* Thus, the broad question in *Armentrout* remained the reasonableness of

the purchaser's decision to rely on a seller's misrepresentations. Here, as in *Armentrout*, the purchaser began to inquire about a particular subject, in reaching out to confirm that one of the advertised avionics was in fact present—and was quickly reassured that there was nothing to worry about. Foreman testified that he did in fact rely on this confirmatory email. Regardless of any intent to mislead, this reassurance would naturally have had a diverting effect on the purchaser's likely investigation and made it more reasonable for him to rely on the advertisement. And the evidence showed that it *did* have such a diversionary effect on Foreman, who "trust[ed] aircraft sales people intrinsically" and accepted the reassuring email as true.

The majority also emphasizes the Fourth Circuit case, *Hoover Universal, Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039, 1041-42, 1044 (4th Cir. 1987). This case does not govern our review. Numerous Virginia cases, previously discussed, adequately set forth the rule for reasonable reliance applicable in Virginia courts. Fourth Circuit case law is at most persuasive, and not binding authority, for Virginia state courts. *See Toghill v. Commonwealth*, 289 Va. 220, 227 (2015). Additionally, *Hoover* is not persuasive in this context, as it is factually distinct from the case at hand in important ways. In *Hoover*, the misrepresentation consisted of *only* one mistaken advertising handout. 809 F.2d at 1041. In this case, the seller-agent posted an inaccurate advertising listing, provided an inaccurate advertising handout, *and* explicitly confirmed the advertisement's accuracy when asked about a potential discrepancy, throwing the buyer off the scent of any potential mistakes. *See Armentrout*, 220 Va. at 466. Additionally, there is no indication that the defect in *Hoover*, as in this case, was difficult to ascertain, being "embedded in the background in the software."

Additionally, in response to the majority's emphasis of Foreman's familiarity with the aircraft purchasing industry, we must stress that a buyer in any case is only a buyer. The assignment of the label, "sophisticated buyer," to Foreman does not elevate or diminish the legal

standard applicable to the seller's duty to provide truthful representation—an experienced buyer cannot be expected to detect and see past a seller's repeated misrepresentations more than any other buyer.

The majority also emphasizes that Foreman did not fully investigate the seller's non-erroneous equipment list, instead relying on the seller's inaccurate equipment list. Because the evidence indicates that Foreman at least partially reviewed the equipment list provided in the marketing brochure—and discovered what he perceived to be a potential discrepancy, prompting his inquiry as to the presence of ADS-B In—the majority states that Foreman should be held to the information that the non-erroneous equipment list would have revealed. For the reasons previously stated, however, I would hold that the affirmative, misleading response that Foreman received after inquiring about the contents of the equipment list in the seller's brochure was sufficient evidence to support the finding that Foreman was "throw[n] . . . off [his] guard" or "divert[ed]" from examining these records in detail. *See Armentrout*, 220 Va. at 466. Additionally, the appellants do not explain why it was unreasonable for Foreman to rely on one of the informational documents it provided him as opposed to their later document. The seller provided both documents. Providing a buyer with an inaccurate document, reassuring the buyer as to its accuracy, and then "tell[ing] him that he might have known the truth by proper inquiry" into a second, more accurate document that the seller provided later should not be a means of avoiding liability. *Walker*, 115 Va. at 117.

Additionally, the record indicated that the logbook in Foreman's possession—one of the items that the majority faults Foreman for not having reviewed in depth—may have introduced more mixed signals and confusion upon further review, rather than revealing to Foreman that he had been misled. The logbook had previously indicated that the aircraft was a 2017 model (a model incompatible with the relevant avionics), but according to Rafamedia's expert witness, "at

- 33 -

some point, someone put a sticker over the 2017 and changed it to 2018." For a buyer who had bought a 2018-model plane with advertised 2018-model avionics, and who had been explicitly reassured that those advertisements were correct, this altered logbook—even if lacking the relevant equipment—would have brought about no further clarity. Instead, the trial judge—making factual determinations that we must grant deference on appeal when reasonable—may have reasonably regarded this logbook as closer to a further reaffirmation of Norfolk Aviation's prior false advertising than a reversal.

Additionally, Foreman's partial virtual inspection of the plane's physical condition—what Foreman could see—should not bind him to imputed knowledge about the plane's avionics, which were "embedded in the background of the software." The evidence indicated that the purpose of the inspection was not to determine whether the plane contained its advertised inventory, but to assess the physical condition of the plane. Foreman recounted performing "a walk-around of the aircraft to the wing, the de-ice boots, the inside of the cabin to be sure the seats weren't ripped up." Klink recalled discussing a scratch on a door "and some blemishes on the leather." And the expert testimony presented at trial indicated that the limitations of this inspection were consistent with those of standard inspections performed in the industry. While the appellants' expert witness testified that a typical inspection would have involved confirming all equipment, Jared Gowlis, Rafamedia's expert witness—whose testimony we must accept on appeal—testified the complete opposite: that it would be completely abnormal to request such an in-depth inspection. Gowlis testified as follows:

> I honestly have never had anyone give me the spec sheet for the aircraft and say, "hey, check this all out to make sure that everything that's in this listing is accurate." Our shop has conducted prepurchase evaluations where we checked for the current maintenance status and safety status of the aircraft, but not to the detailed level of checking the specification sheets.

Given our mandate to view the evidence in the light most favorable to the prevailing party, this testimony and expert evidence indicates that the virtual inspection performed by Foreman—in line with the average physical inspection performed in the industry—was not an all-inclusive investigation into the subject of whether the plane contained all its advertised components. *See Rowe v. Rowe*, 24 Va. App. 123, 140 (1997) ("Where experts offer conflicting testimony, it is within the discretion of the trial court to select either opinion."). Rather, it was an investigation into the plane's physical condition. A full investigation into that condition ("the subject matter at hand") would not have revealed the accuracy of every item listed on the erroneous equipment list or the presence of the avionics. *See Dunham*, 203 Va. at 767.

And, even if we were inclined to ask Foreman to investigate beyond what is customary in the industry, the evidence in the record suggested that the presence of the avionics would not have been easy—or, potentially, even possible—for someone to detect who chose to investigate on his own. This is because the avionics, as Foreman testified, were "embedded in the background in the software." Therefore, he testified that not only were the avionics not ignited during the virtual inspection, but they would not have been possible to detect even if the system were ignited. Klink's testimony added another complicating factor: he testified that understanding the avionics' presence required a degree of sophistication. Klink testified that the avionics would have been (and, according to him, were) shown upon ignition of the avionics master, but admitted that he did not know this was the case because he himself was not able to recognize the avionics from the display. Viewed in the light most favorable to Rafamedia, this testimony indicated that the avionics' presence would not have been possible for Foreman to glean even if Klink had turned the system on during the investigation, or that, at the very least, it required expertise to identify—and there was no evidence that Foreman possessed that expertise.

The majority's emphasis that Foreman had the opportunity to physically inspect the plane disregards the substantial evidence before the court that such an inspection, focused on verifying the complete accuracy of the equipment list, would have far surpassed the standard inspection usually performed in the industry, and the evidence that a physical inspection would not have likely revealed the relevant issue.

In sum, the evidence before the trial court was more than sufficient for the trial court to make the factual finding required to meet the standard of the fraud doctrine that the majority focuses on: that Foreman reasonably relied on the seller-agent's repeated misrepresentations in choosing to purchase the aircraft. Undoubtedly, a false representation of material fact was made to Rafamedia. It was made innocently or negligently. Nevertheless, Rafamedia was damaged as a result of its reasonable reliance upon the misrepresentation. *See Richmond Metro.*, 256 Va. at 557-58.

CONCLUSION

A general verdict may have multiple reasons. A precise reason is not required. As long as the record supports a reasonable basis for the verdict, the trial court's decision should be upheld. This Court should have reached and considered all of Rafamedia's claims against the appellants.

Additionally, even on the claim that the majority chooses to analyze, the evidence was more than sufficient to sustain the verdict for Rafamedia. There is no disagreement that Rafamedia was provided with incorrect and misleading information. The record states that Richard Foreman, Rafamedia's managing member, purchased an aircraft in reliance on inaccurate statements made in an online listing and an advertising brochure, and in reliance on a subsequent email affirmation of those statements. All parties knew the expectations of the buyer, Rafamedia: to purchase a 2018 aircraft that possessed an avionics system that included various

- 36 -

tools within the software, including ADS-B In.  Norfolk Aviation, LLC, the seller-agent for Phillips Avenue Holdings, LLC, falsely represented in its advertisement and via email that these embedded features were included in the aircraft's software.  In response, Foreman "took the seller's word for it."  In these circumstances, in which the buyer had no reason to suspect that it was unreasonable to rely on misrepresentations, in which he was specifically reassured of their veracity, and in which the inaccuracy of those statements was outside the scope of a typical pre-buy inspection in the industry, the evidence clearly supports the trial court's verdict for Rafamedia.

The record undoubtedly supports the trial court's verdict.  Foreman provided unrebutted testimony that the presence of the avionics system's advanced tools, including ADS-B In, was important to his decision to purchase the plane.  Additionally, Norfolk Aviation *knew* and *acknowledged* Rafamedia's expectations, and asserted that those specific features were included, despite knowing that these features were essential.  The seller repeatedly, falsely affirmed the avionics' presence.

The trial court used a general verdict.  This Court cannot attempt to ascertain the true reason for the judge's verdict and must rely on any reasonable basis in the record—not just the bill of particulars, a supplemental motion—that supports the trial court's decision.  Here, in reviewing the entire record and all evidence available to the trial judge, there was more than sufficient evidence in the record to support the general verdict for Rafamedia.

For all these reasons, I would affirm the trial court's judgment for Rafamedia.